AMERICAN NEWS CO., Inc., a Michigan Corporation, and Hugh Logan Kinsey, Plaintiffs-Appellees,

v.

Paul M. LADAS et al., Defendants-Appellants.

No. 71–1304.

United States Court of Appeals, Sixth Circuit.

Feb. 2, 1972.

Paul M. Ladas, Pros. Atty., Muskegon County, Muskegon, Mich., for defendants-appellants.

John W. Piggott, P. C., Bay City, Mich., for plaintiffs-appellees.

Before PHILLIPS, Chief Judge, and EDWARDS and BROOKS,* Circuit Judges.

EDWARDS, Circuit Judge.

This is an appeal from an injunction and an amended injunction issued by the United States District Court for the Western District of Michigan enjoining certain law enforcement officials of the City of Muskegon Heights and the County of Muskegon, Michigan, from continuing to hold and requiring them to

* Honorable Henry L. Brooks died on December 30, 1971.

return to plaintiffs a mass of magazines, books, slides and movies seized by said law enforcement officials on November 5, 1970, constituting 7,931 items in sum total.

█ Under an agreed statement of facts upon which this case was heard before the District Judge, the seizures were made at the time of the service of five warrants of arrest upon one of the plaintiffs-appellees, Kinsey, who was manager of the "Adult Book Store" where these materials were displayed for sale or exhibit. It is conceded that prior to the seizure there had been no judicial determination of the obscenity of the material seized and it is also conceded before us that a motion to suppress made in the state court criminal prosecution has, to this date, not been acted upon. Plaintiffs alleged in the District Court complaint bad faith, harassment and irreparable damage and violation of plaintiffs' First, Fourth, Fifth and Fourteenth Amendment rights.

On February 23, 1971, the District Judge ordered defendants to return all items seized by them "forthwith," but enjoined the plaintiffs from selling or disposing of any of those items until March 11, 1971. On March 10, 1971, on petition by appellants, the District Court entered a partial stay of its order of February 23, whereby plaintiffs were ordered to keep and maintain one copy of all materials returned to them pursuant to its order of February 23, and to keep and refrain from selling or disposing of certain movie viewers which were named in its order so that they might be made available to defendants for purposes of this appeal.

Appellants contend that the injunction issued had the effect of preventing state prosecution of plaintiff Kinsey on charges of knowingly selling to a person under 18 years of age obscene materials tending to corrupt the morals of youth, in violation of Mich.Stat.Ann. ch. 286a, § 28.575(5), M.C.L.A. § 750.343e (Supp. 1970). They rely upon the six cases referred to below.

On the very day the District Judge issued his original order, namely, February 23, 1971, the Supreme Court of the United States handed down six decisions which deal with federal court intervention in state court criminal prosecutions: Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L. Ed.2d 696 (1971); Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971); and Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971).

The fundamental rationale of the Court in these cases is set forth in Younger v. Harris:

"The precise reasons for this long-standing public policy against federal court interference with state court proceedings have never been specifically identified but the primary sources of the policy are plain. One is the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief. * * *

This underlying reason for restraining courts of equity from interfering with criminal prosecutions is reinforced by an even more vital consideration, the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

* * * * * *

"This brief discussion should be enough to suggest some of the reasons why it has been perfectly natural for our cases to repeat time and time

again that the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions. In Fenner v. Boykin, 271 U.S. 240, [46 S.Ct. 492, 70 L.Ed. 927] (1926), suit had been brought in the Federal District Court seeking to enjoin state prosecutions under a recently enacted state law that allegedly interfered with the free flow of interstate commerce. The Court, in a unanimous opinion made clear that such a suit, even with respect to state criminal proceedings not yet formally instituted, could be proper only under very special circumstances:

'Ex parte Young, 209 U.S. 123, [28 S.Ct. 441, 52 L.Ed. 714] and following cases have established the doctrine that when absolutely necessary for protection of constitutional rights, courts of the United States have power to enjoin state officers from instituting criminal actions. But this may not be done except under extraordinary circumstances, where the danger of irreparable loss is both great and immediate. Ordinarily, there should be no interference with such officers; primarily, they are charged with the duty of prosecuting offenders against the laws of the State and must decide when and how this is to be done. The accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection.' *Id.*, at 243–244. [46 S.Ct. at 493.]

"These principles, made clear in the *Fenner* case, have been repeatedly followed and reaffirmed in other cases involving threatened prosecutions. See, *e. g.*, Spielman Motor Sales Co. v. Dodge, 295 U.S. 89 [, 55 S.Ct. 678, 79 L.Ed. 1322] (1935); Beal v. Missouri Pac. R. Co., 312 U.S. 45 [, 61 S.Ct. 418, 85 L.Ed. 577] (1941); Watson v. Buck, 313 U.S. 387 [, 61 S.Ct. 962, 85

L.Ed. 1416] (1941); Williams v. Miller, 317 U.S. 599 [, 63 S.Ct. 258, 87 L.Ed. 489] (1942); Douglas v. City of Jeannette, 319 U.S. 157 [, 63 S.Ct. 877, 87 L.Ed. 1324] (1943).

"In all of these cases the Court stressed the importance of showing irreparable injury, the traditional prerequisite to obtaining an injunction. In addition, however, the Court also made clear that in view of the fundamental policy against federal interference with state criminal prosecutions, even irreparable injury is insufficient unless it is 'both great and immediate.' *Fenner, supra*. Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution." Younger v. Harris, *supra*, 401 U.S. at 43–46, 91 S.Ct. at 750–751.

If it might be doubted that this language would apply to a case concerning an obscenity prosecution where there was a First Amendment defense, the majority opinion in Perez v. Ledesma, *supra*, which was such a case, serves to answer that question.

On appeal to this court the issue presented is stated as follows:

"Was the United States District Court for the Western District of Michigan in error in totally denying to the law enforcement officials of Muskegon County, Michigan, any use of allegedly obscene materials as evidence in the prosecution of criminal offenses of distributing obscene materials to youths under 18 years, when such materials were seized incident to arrests with warrants for such offenses and not seized by first having a prior adversary proceeding?"

Obviously the District Judge, in issuing his original order on the date the

Supreme Court decided the six cases cited above, could not have been aware of them or have considered their impact.

We are by no means unaware of the continued validity of such cases as A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), and Marcus v. Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L. Ed.2d 1127 (1961), which on First Amendment grounds require a prior adversary proceeding before there may be seizures of masses of allegedly obscene materials.

█ As the District Judge held, the unfettered discretion exercised by the police in seizure and confiscation of this mass of material is inconsistent with the protection afforded expression by the First Amendment. *See* Marcus v. Search Warrant, 367 U.S. 717, 731–733, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961).

All that is required, however, to effect practical reconciliation of these two lines of Supreme Court authority in the instant case is for the District Judge to amend his temporary stay order so as to require that a single copy of each of the materials, alleged by the prosecution to be essential to its criminal charge, be made available to the prosecution for purposes of tendering same in the state court prosecution. By requiring this, neither our opinion nor the District Judge's order should be read as passing on the issue of the admissibility or the obscenity of any such exhibits. As we read *Younger* and *Perez*, both the obscenity issue presented by the prosecution and the Fourth Amendment issue presented by the appellees should be litigated first in the state court forum.

█ We do, of course, have a claim in this case that appellants' conduct was "undertaken in bad faith" and "for the purpose of harassing" appellees and driving them out of business. No such finding of fact was entered by the District Judge. Nor does the record demonstrate any evidence of such bad faith.

*See,* Perez v. Ledesma, 401 U.S. 82, 85, 97, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971).

The judgment of the District Court is affirmed, with modifications outlined above, and the case is remanded for further proceedings consistent with this opinion.