**ART THEATRE GUILD, INC., and Sherpix, Inc., Plaintiffs-Appellants,**

v.

**Larry E. PARRISH et al., Defendants-Appellees.**

No. 73–1422.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 26, 1973.

Decided Sept. 24, 1974.

Ralph J. Schwarz, Jr., New York City, for plaintiffs-appellants; Edmund C. Grainger, Jr., New York City, Michael F. Pleasants, Frierson M. Graves, Jr., Memphis, Tenn., on brief; Heiskell, Donelson, Adams, Williams & Wall, Memphis, Tenn., of counsel.

J. N. Raines, Asst. U. S. Atty., Memphis, Tenn., for defendants-appellees; Thomas F. Turley, Jr., U.S. Atty., Memphis, Tenn., on brief.

Before PHILLIPS, Chief Judge, PECK, Circuit Judge, and JOINER,* District Judge.

* The Honorable Charles W. Joiner, Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

JOINER, District Judge.

The plaintiffs-appellants in this case seek reversal of the District Court's Order refusing to order the return of all ten (10) or twelve (12) prints of a motion picture seized pursuant to search warrants from various persons throughout the United States. Defendants contend they have a right to retain the prints as evidence in the prosecution of the plaintiffs-appellants for violation of federal obscenity laws and for conspiracy to violate them. The case is affirmed but remanded to the District Court to carry out the mandate set forth in this opinion.

### Background

An Order to Show Cause was issued by the District Court in Memphis, Tennessee, ordering the possessors of the motion picture "Schoolgirl" to either bring the film forthwith to the District Court, or, alternatively, to give the film to the United States Marshal for its transportation to the District Court, and to come and show cause, if any, why the film should not be declared obscene. The film was then in the possession of Film Transit, Inc., having completed a play-date of approximately eleven (11) weeks at the Studio Theatre, Memphis, Tennessee, and was in the process of being shipped from Tennessee to New Jersey.

When the film was physically produced in open court counsel, now before this court representing plaintiff Art Theatre Guild, Inc., appeared demanding return of the film but without stating whose interest he represented. The court viewed the film, but on motion of the attorney demanding return of the film, adjourned the adversary hearing in order to allow an opportunity for anyone having an interest in the film to assemble proof on the issue of obscenity. No person subject to an *in personam* order of the court offered to or requested return of the film at that point, and the court kept it in order not to be divested of its power and control over the subject matter or *res* of the controversy.

An evidentiary hearing was held and the court found the film obscene and directed that the seized print be retained by the government.

Thereafter, an indictment was returned against Art Theatre Guild, Inc., and one of its executive officers, charging, in one count, a violation of 18 U.S. C. § 1462 for using a common carrier to ship the motion picture "Schoolgirl" to Memphis, Tennessee. The grand jury investigation continued, and it concluded the issuance by the grand jury of numerous subpoenas. Among those were subpoenas to various persons and corporate entities requiring them to bring prints and negatives, among other things, to Memphis from various places throughout the nation.

Later, the appellants Art Theatre Guild, Inc., and Sherpix, Inc., filed a complaint against Larry E. Parrish, an Assistant United States Attorney, and Thomas Turley, the United States Attorney, seeking declaratory relief, injunctive relief, and damages. The complaint alleged that after the conclusion of the hearing, at which time the judge ruled the motion picture "Schoolgirl" was obscene as a preliminary matter, Mr. Parrish, the Assistant United States Attorney, caused approximately (30) *subpoena duces tecum* to be issued and served throughout the United States. These subpoenas required the production not only of all business records but the master negative and all prints of the motion picture "Schoolgirl."

The court, within ten (10) days, heard the motion for preliminary injunction and ruled that because the motion for preliminary injunction raised issues that were addressed to the subpoenas that had been issued for the grand jury, the court would consider the motion for preliminary injunction as a motion to quash the subpoenas. It then quashed the subpoenas as to the production of the motion picture prints and said that "The effect of the subpoenas would be to suppress this film." The court further said:

> "Now, even if a conspiracy exists, this court does not believe that it should be the cause of suppressing the showing of this film."

As a condition of the granting of the motion to quash, the court directed that the films not be altered or destroyed and directed that the parties subpoenaed keep a record of the location of all prints and the master negative, and directed that they be held and accounted for subject to the further order of the court.

Subsequent to this ruling, Mr. Parrish, Assistant United States Attorney, in cooperation with Mr. Hester of the Memphis FBI office, and with the cooperation of various FBI agents throughout the country, obtained a number of search warrants. Within the next few days, approximately ten (10) to twelve (12) prints of the motion picture "Schoolgirl," and the master negative of the film, were seized throughout the country. The warrants were issued by United States Magistrates in Newark, New Jersey; Camden, New Jersey; Minneapolis, Minnesota; and Los Angeles, California.

A motion for a preliminary injunction was immediately filed requesting the return of the prints and negatives seized as a result of the search warrants. It also requested an injunction against any further seizures or suppressions of the motion picture by use of search warrants, grand jury subpoenas, or any other method of procedure. Within thirty (30) days, the District Court in a Memorandum Decision and Order denied plaintiffs' motion seeking a return of the seized material. It is an appeal from that order which is before this court.

Two and one half months later, the grand jury returned an indictment which superseded the original indictment returned against Art Theatre Guild, Inc. The subsequent indictment names approximately twenty-five (25) corporate and individual defendants, including both plaintiffs in this case. It again alleges violations of 18 U.S.C. § 1462, but now includes an alleged violation of 18 U.S.C. § 371, charging a conspiracy involving the national distribution of the motion picture "Schoolgirl."

## Discussion

The problems raised in this case bring into conflict competing policies of federal law. On the one hand, the defendants contend they are entitled to keep the evidence they have lawfully acquired in order to prosecute the plaintiffs-appellants for violations of the law. On the other hand, the plaintiffs-appellants contend they are entitled, in the exercise of the rights of free speech and press, to have the motion pictures and masters returned to them. Both the plaintiffs-appellants and the defendants-appellees have seized the policy most favorable to their position, and the plaintiffs-appellants have asked this court to resolve the dispute in their favor by reversing the trial court ruling refusing to return the films. Both policies are entitled to support, and conflict between them in their application is to be avoided if it can be done.

The subsequent indictment involving not only the plaintiffs-appellants but also a number of other persons throughout the United States on questions involving the transportation, shipment and receipt of the motion pictures in interstate commerce and conspiracy involving the same shipments, etc., point up the need to consider the propriety of responding affirmatively, without thought of the possible consequences to that criminal litigation, to the plaintiffs-appellants' demands in a civil action for the return of the films.

The defendants first seek refuge in the policy enunciated in DiBella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1961). The defendants view this proceeding as no more than a mere guise for an attempt to suppress evidence to be used in the criminal proceedings brought against these and other defendants in the subsequent indictment. Cogen v. United States, 278 U.S. 221, 49 S.Ct. 118, 73 L.Ed. 275 (1929). Review of an order refusing to return property was not permitted in *DiBella* unless the demanded return of the property was completely independent from any criminal proceedings. The Supreme

Court sought to define independent by stating: "Only if the motion is solely for return of property and is in no way tied to a criminal prosecution *in esse* against the movant can the proceedings be regarded as independent." 369 U.S. at 131–132, 82 S.Ct. at 660.

Undoubtedly the present motion is indeed tied to a criminal proceeding now pending in the Western District of Tennessee. United States of America v. Gerber, et al., Criminal No. 73–45. Count one of the indictment in that action alleges a conspiracy, on a nationwide scale, to violate 18 U.S.C. § 1462, all in violation of 18 U.S.C. § 371. The indictment further alleges violations of 18 U.S.C. §§ 2 and 1462.

This is precisely the problem to which *DiBella* addresses itself, to wit, the piecemeal litigation of criminal proceedings. Memories fade, witnesses become unavailable and perishable evidence disappears as the mills of justice slowly grind. These precise evils are what *DiBella* sought to prevent, and were it not for the competing policy urged by the plaintiffs-appellants, and examined below, this appeal would be dismissed forthwith.

The policy of the law on which plaintiffs-appellants rely is stated in American News Company v. Ladas, 454 F.2d 1237 (6th Cir. 1972), when this court affirmed an order returning books seized as a result of a massive seizure that were not essential to the criminal prosecution of obscenity. Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L. Ed.2d 745 (1973), opted for the freedom to display films there involved on the same theory as did *Ladas* with the books, but permitted the retention by the prosecution of enough copies for evidential purposes.

The narrow issue before the Supreme Court in *Heller* was "whether a judicial officer authorized to issue warrants, who has viewed a film and finds it to be obscene, can issue a constitutionally valid warrant for the film's seizure as evidence in a prosecution against the exhib-itor, without first conducting an adversary hearing on the issue of probable obscenity." 413 U.S. at 484, 93 S.Ct. at 2791. The narrow holding on that narrow issue was "there is [no] absolute First or Fourteenth Amendment right to a prior adversary hearing applicable to all cases where allegedly obscene material is seized. . . . In particular, there is no such absolute right where allegedly obscene material is seized, pursuant to a warrant, to preserve the material as evidence in a criminal prosecution." *Id.* at 488, 93 S.Ct. at 2792.

Opinions of the Supreme Court, however, are more than narrow issues and narrow holdings. Rather, they are guidelines for lower courts to follow as they preside over the multiplicity of problems which arise in the Nation's diverse state and federal courts. As such the opinions must be looked to in their entirety as the Nation's many judges work to breathe life into law as enunciated by the Nation's highest arbitrator of Constitutional issues.

For guidance in this case, the Court in *Heller* made the following statement:

"But seizing films to destroy them or to block their distribution or exhibition is a very different matter from seizing a single copy of a film for the *bona fide* purpose of preserving it as evidence in a criminal proceeding, particularly where, as here, there is no showing or pretrial claim that the seizure of the copy prevented continuing exhibition of the film. If such a seizure is pursuant to a warrant, issued after a determination of probable cause by a neutral magistrate, and, following the seizure, a prompt judicial determination of the obscenity issue in an adversary proceeding is available at the request of any interested party, the seizure is constitutionally permissible. In addition on a showing to the trial court that other copies of the film are not available to the exhibitor, the court should permit the seized film to be copied so that showing can be continued pending a

judicial determination of the obscenity issue in an adversary proceeding. Otherwise, the film must be returned." [Footnotes omitted.] *Id.* at 492, 93 S.Ct. at 2794–2795.

This court must fashion a decision which gives recognition to both *DiBella* and *Heller.* On the one hand this entire matter could simply be remanded with directions to raise in the criminal proceedings the issues fostered by the *Heller* decision. But mitigating against that is the entire thrust of *DiBella,* how best to prevent delay. If the court remanded these issues for them to be raised in the criminal proceedings, the result would be precisely that, delay. The reality of judicial economy and the spirit and intent of *DiBella* dictate that this court resolve the issues in light of the *Heller* decision.

Since *DiBella* predated *Heller,* it obviously could not have given consideration to the dictum found therein. The decision takes no account of the Supreme Court's statement, that one copy of a film is sufficient to preserve the evidence needed in the prosecution of an obscenity offense. *Heller* however, does not address itself to the problems presented in the prosecution of a nationwide conspiracy case.

The Supreme Court in Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), touches on this problem and indicates how a district judge sitting in one district can handle the "contemporary community standard" requirement when faced with a federal prosecution and the need to consider its application in several districts.

In this case the trial judge held an evidential hearing on the preliminary question of obscenity and found the film to be obscene. Based on that finding search warrants were issued and the copies of the film were seized. This is not a case analogous to A Quantity of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), or Marcus v. Search Warrants, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961). As stated in Heller, "the requirements of A Quantity of Books and *Marcus* are fully met." *Heller, supra,* 413 U.S. at 491, 93 S.Ct. at 2794. There was an ". . . independent judicial determination of obscenity by a neutral detached magistate . . . [and] the seizures [were] made to preserve evidence for a criminal prosecution." *Heller, supra, Id.* at 491, n. 7, 93 S.Ct. at 2794.

The trial judge found that Sherpix, Inc., a plaintiff-appellant in this case, was the owner of the film and that the adversary hearing on obscenity was binding on it. The court declined to interfere with the efforts of those charged with enforcing the law from obtaining "evidence in furtherance of *bona fide* investigations and prosecutions for violations of the United States laws." The court did not abuse its discretion in refusing to interfere.

On remand, if it appears to the trial court "that other copies of the film are not available to the exhibitor, the court should permit the seized film to be copied," *Heller, supra, Id.* at 492, 93 S.Ct. at 2795, at their own expense. The defendants are, of course, entitled to the safeguards set forth in *Heller* as to the copying of the film which is being preserved as evidence in a criminal proceeding.

This directive preserves the policy of the law permitting the government to gather evidence for use in prosecution of violations of law, while at the same time permitting the free exercise of the First Amendment rights of the Constitution.

The case is affirmed but remanded to the District Court to supervise the process of permitting, if necessary, the appropriate plaintiff-appellant to make copies of the seized films without destroying the government's right to retain the evidence it deems necessary for its case, and to determine as provided in the trial court memorandum if any material seized "is not relevant and necessary evidence to the prosecution."

So ordered.