**Beau LAMBERT and Palmer Communications Incorporated, Plaintiffs,**

v.

**POLK COUNTY, IOWA, the City of Des Moines, Iowa, James Smith, John Doe and John Roe, Defendants.**

**Civ. No. 89–566–B.**

United States District Court, S.D. Iowa, C.D.

Aug. 31, 1989.

**130**

Kasey W. Kincaid, Nyemaster Law Firm, Des Moines, Michael A. Giudicessi, Des Moines, Iowa, for plaintiffs.

Norman G. Jesse, Asst. Polk Co. Atty., Des Moines, Iowa, for Polk County, Iowa and James Smith.

Patrick J. Hopkins, City Sol., Des Moines, Iowa, for City of Des Moines.

## MEMORANDUM OPINION AND PRELIMINARY INJUNCTION

VIETOR, Chief Judge.

This suit arises because two Des Moines policemen took from plaintiff Beau Lambert (Lambert) a videotape he had made of a street fight that proved fatal, and defendants have refused to return the videotape, or a copy of it, to Lambert. After the videotape was taken from Lambert, he and WHO–TV, a commercial television station in Des Moines owned by plaintiff Palmer Communications Incorporated (Palmer), entered into an agreement under which Lambert is to sell the tape or a copy of it to WHO–TV.

Plaintiffs assert in Count 1 of the complaint that their rights under the Privacy Protection Act, 42 U.S.C. § 2000aa et seq., were violated by defendants. They assert in Count 2 that plaintiff Lambert's Fourth Amendment right to be free from unreasonable search and seizure and Fifth Amendment due process and just compensation rights, applicable to the states through the Fourteenth Amendment to the United States Constitution, were violated by defendants, and that plaintiffs' First Amendment right to gather and broadcast news, also applicable to the states through the Fourteenth Amendment, were violated by defendants. Count 2 proceeds under 42 U.S.C. § 1983, which provides a remedy for violations of a person's rights guaranteed to him under the United States Constitution by persons acting under color of state law. In Count 3 plaintiffs assert violations by defendants of their Iowa state constitutional protections against unreasonable searches and seizures and rights of free speech and press. In Count 4 plaintiffs assert a breach by defendants of an alleged contract between Lambert and defendants, to which they contend WHO–TV was a third party beneficiary.

Plaintiffs filed a motion for preliminary injunction seeking a mandatory injunction requiring defendants to return the videotape to plaintiffs. (In their brief and oral arguments, plaintiffs make clear that they seek only a copy of the videotape and if they are provided a copy they have no objection to defendants keeping the original.) Hearing on the preliminary injunction motion was held on August 24, 1989. All parties appeared at the hearing with counsel, except defendants John Doe and John Roe who were not served. (It became clear at the hearing that defendants Doe and Roe are Mike Gonzalez, a Des Moines police officer, and James Bonwell, a Des Moines police department sergeant, both of whom testified as defense witnesses at the hearing.)

## PRELIMINARY INJUNCTION STANDARD

In the Eighth Circuit, "[w]hether a preliminary injunction should issue involves

consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109, 113 (8th Cir.1981).

## FINDINGS OF FACT

Very early on the morning of August 1, 1989, Lambert was in the downtown Des Moines "loop" area with his videocamera. His purpose was to videotape the nighttime street activities in the loop, such as fights. Although he had never sold any videotape to a television station, he intended to sell to WHO–TV or any other buyer anything newsworthy that he might videotape.

Lambert saw a fight taking place and he videotaped it. After the fight was over he observed that the participant who got the worst of it, Richard Lee, was bleeding badly and he went to a phone and called the police. Upon his return to the scene he observed Des Moines Police Department Officer Mike Gonzalez and told him that he thought he had the event on tape. Another officer, Sergeant James Bonwell, arrived, and the officers obtained the tape from Lambert. They did not have a search warrant authorizing seizure of the tape.

Lambert's version and the officers' version of how the police obtained the tape from Lambert vary. Lambert testified that he surrendered the tape to the officers only after they promised to make a copy of it and get the copy back to Lambert that day or the next day. He testified that the only reason he surrendered the tape was the repeated assurances he obtained from the officers that he would get a copy of the tape back. Both officers testified that they simply told Lambert that they were going to take the tape and he surrendered it to them. Sergeant Bonwell testified that Lambert did ask when he would get his tape back, and that he told Lambert he would get it back after the trial of anybody charged if there was anything of evidentiary value on it.

Richard Lee died shortly after the fight. Sometime during the morning of August 1, Des Moines Police Department Detective Randy Dawson telephoned Lambert to tell him of Lee's death. Lambert asked Detective Dawson when he would get the tape back, and Dawson indicated he would not get it back until after the trial of the person accused of killing Lee.

Later on August 1 Lambert called WHO–TV and spoke with Brian J. Greif, Assistant News Director, offering to sell the tape to WHO–TV. Lambert told Greif that he had turned the tape over to the police only after the officer in charge at the homicide scene had promised to return the tape, but that since then the police had indicated they would not give it back. Lambert and Greif reached an agreement that WHO–TV would assist Lambert in retrieving the tape or a copy of it from the police and that once the tape or a copy of it was back in Lambert's possession he would turn it over to WHO–TV for its exclusive ownership and use. WHO–TV would pay Lambert a one time free-lance photographer's fee of at least $100 and not more than $500, depending on the news value of the tape. It was further agreed that no other copies of the tape could be sold to any other individual or television station. On August 9, 1989, a written memorandum of the agreement was signed by Greif and Lambert.

Repeated efforts by Lambert and WHO–TV to obtain back from the defendants the tape or a copy of it have been rejected. The tape is presently in the custody and control of the Polk County Attorney, defendant James Smith.

A few hours after the fight, Dante McKenzie was arrested and a preliminary complaint has been filed charging him with first degree murder. The state has until September 14, 1989, within which to indict him or charge him in a County Attorney's Information. Iowa Rule of Criminal Procedure 27(2)(a).

## PROBABILITY OF SUCCESS BY PALMER

Palmer will probably not succeed on the merits on any of the four counts of the complaint.

■ The Privacy Protection Act, 42 U.S.C. § 2000aa, provides in subsection (a) that: "It shall be unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize any work product materials possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce," with certain exceptions not here applicable. Section 2000aa–6(a) provides a civil cause of action for damages for any person aggrieved by a search for or seizure of materials in violation of the Privacy Protection Act. If the Privacy Protection Act was violated, it appears that only Lambert, and not Palmer, is the "aggrieved" person. Furthermore, the seizure must be of materials possessed "by a person reasonably believed to have a purpose to disseminate to the public a * * * broadcast * * *." There was nothing about the way Lambert presented himself to Officers Gonzalez and Bonwell that would have led them to reasonably believe that Lambert's purpose was to make a dissemination of the videotape to the public. He was not a news station employee and there is no evidence that he told the officers he intended to sell the videotape to a news station for broadcast to the public, and there is no evidence of any other sort to suggest that the police officers should have reasonably believed that such was his intention. Thus, it is very unlikely that Palmer will succeed on the Privacy Protection Act claim.

■ It is also unlikely that Palmer will succeed on its theory that it is a third party beneficiary to a contract between Lambert and the defendants. Under Iowa law, the test of whether a party may assert a claim as a third party beneficiary to a contract is whether the contracting parties intended that a third person should receive a benefit which might be enforced in the courts. *Phenix Fed. Sav. & Loan v. Shearson Loeb Rhoades*, 856 F.2d 1125 (8th Cir.1988); *Bailey v. Iowa Beef Processors, Inc.*, 213 N.W.2d 642, 645 (Iowa 1973). Assuming that there was a contract between Lambert and the defendants, there is no evidence to support a reasonable inference that the defendants intended that Palmer benefit from the agreement.

■ Finally, as for Palmer, assuming that defendants violated Lambert's federal and state constitutional rights, there is nothing to suggest that Palmer's rights were also violated or that Palmer has acquired any standing to assert a claim of its own based on any violation of Lambert's rights. If Lambert's rights were violated, they were violated many hours before Lambert entered into the agreement with WHO–TV. Under that agreement, the most that WHO–TV has acquired is a right to get the videotape or a copy of it from Lambert if and when Lambert recovers it. The agreement does not constitute an assignment by Lambert to Palmer of any cause of action that Lambert may have against the defendants for violation of his federal and state constitutional rights.

## PROBABILITY OF SUCCESS BY LAMBERT

Lambert will probably succeed on his constitutional claims, although he has not demonstrated that it is likely that he will succeed on his Privacy Protection Act claim and his contract claim.

■ It is improbable that Lambert will prevail on the merits on his Privacy Protection Act claim because he has made no showing that Officers Gonzalez and Bonwell should have reasonably believed that his purpose was to make a dissemination of the videotape to the public.

Based on the evidence at the preliminary injunction hearing, it is not probable that Lambert will prevail on his contract claim. He might prevail if he persuades the finder of fact by a preponderance of the evidence that he did enter into an agreement with the officers when he surrendered the tape to them, but it would be speculative for me to find at this point that he will probably carry his burden of persuasion on that issue.

■■ I think, however, that it is highly probable that Lambert will prevail, at least against defendants Doe, Roe and Smith,[1] on his section 1983 claim that his federal constitutional rights were violated and his similar state constitutional rights claim. It appears from the evidence that I heard at the preliminary injunction hearing that Lambert's right to be free from unreasonable seizure of his property was violated, that his right not to be deprived of property without due process of law was violated, and that concomitantly his First Amendment rights were violated.

■ Defendants contend that Lambert voluntarily consented to the police taking the videotape and that there was no agreement to promptly provide him with a copy. For a seizure to be constitutionally permissible based on consent, the consent must have been "voluntarily given, and not the result of duress or coercion, express or implied." *Schneckloth v. Bustamonte*, 412 U.S. 218, 248, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854 (1973). I believe it is very likely that the trier of fact will find that Lambert did not voluntarily consent. Under his version of the events, his consent would not be voluntary because it was obtained by false representations that he would, within a day or two, receive back a copy of the tape. I also think it likely that the finder of fact will find Lambert's consent was not voluntary even if the police officers' version of the events is believed. Under their version, they did not ask for the tape—they simply told Lambert they were taking it. I think it likely that the trier of fact, in evaluating a situation in which an individual is told, not asked, by two policemen on the street in the middle of the night at the scene of a violent crime that they are taking his tape, will find that such a situation presented implied duress or coercion resulting in delivery of the tape to the police. From such a finding it would also follow that the taking was a taking of Lambert's property without due process of law and that it also clearly violated his First Amendment right to display the tape

and disseminate it in any way he wishes. (It is not just news organizations, such as WHO–TV, who have First Amendment rights to make and display videotapes of events—all of us, including Lambert, have that right.)

I think it quite likely that Lambert will prevail on these constitutional claims, at least against defendants Doe and Roe (Gonzalez and Bonwell) and defendant Smith, who the evidence shows is now in possession of the tape and who has actively joined Doe and Roe in refusing to provide Lambert with a copy of his tape.

■ From the evidence presented at the preliminary injunction hearing, I do not believe it is probable that Lambert will prevail against the defendants Polk County and the City of Des Moines. Those defendants cannot be liable on a theory of respondeat superior on Lambert's section 1983 count. *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). They can be held liable under section 1983 only if it is proved by Lambert that any violation of his constitutional rights by other defendants was a result of policy or custom of the county or the city. If Lambert prevails on his contract theory, which looks doubtful, the city might be liable on a respondeat superior theory. For reasons previously discussed, the city and county are not likely to be held liable under the Privacy Protection Act.

## THREAT OF IRREPARABLE HARM

■ There is clearly a threat of irreparable harm to Lambert if he does not promptly get his videotape back. Lambert has a right to use the tape under the First Amendment to the United States Constitution. *Heller v. State of New York*, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973); *Art Theatre Guild, Inc. v. Parrish*, 503 F.2d 133 (6th Cir.1974). The First Amendment is applicable to the states through the Fourteenth Amendment, *Jo-*

---

1. Smith may assert and establish entitlement to prosecutorial immunity from money damages, *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), but that does not immunize him from injunctive relief.

*seph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 500–02, 72 S.Ct. 777, 779–81, 96 L.Ed. 1098 (1952); *Gitlow v. New York*, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925). The Supreme Court has stated: "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976).

Defendants argue that the harm to Lambert is not irreparable because he could proceed in state court under Iowa Code Chapter 809 to get the tape back. Perhaps he could, but that does not mean that the harm occurring to him every day he is without the tape is not irreparable. It is well established that exhaustion of state remedies is not a prerequisite to maintaining a section 1983 claim. The relief he could obtain under Chapter 809 is in substance the same relief he seeks here, return of the tape, rather than some other legal remedy that would make him whole. No remedy other than prompt return of the tape is adequate.

Lambert has clearly established that defendants' refusal to provide him with a copy of the tape threatens him with irreparable harm, which increases with each passing day.

## STATE OF BALANCE

█ The state of balance between the harm to Lambert if defendants are not compelled to promptly deliver to him a copy of the videotape and the injury that granting the mandatory injunction will inflict on defendants weighs decidedly in favor of issuing the preliminary injunction. As pointed out above, at stake for Lambert is his First Amendment right to have and display and disseminate the videotape as he sees fit, a very fundamental right in our free society. The only injury to the defendants would be that public broadcasting of the videotape by WHO–TV in advance of the trial of McKenzie might add some burden to the jury selection process. The defense, or perhaps even the prosecution, might have some concern about selecting jurors who had seen the videotape on a

WHO–TV broadcast. I do not think, however, that this will present a serious problem. The videotape no doubt will be admissible into evidence at the trial of the case, so it will not be a situation where potential jurors might be exposed in advance of the trial to prejudicial information that is not going to be presented to the jury during the trial, such as a broadcast about a confession by the accused when that confession has been suppressed as evidence. My experience in trying hundreds of criminal cases in the course of 14 years as a state trial judge and ten years as a federal trial judge convinces me that if WHO–TV broadcasts the tape before trial, only a small percentage of the potential jurors will see it. If I am wrong in my prediction and a serious jury selection problem develops, the problem will be solved by moving the trial to a county outside of the broadcast range of WHO–TV. Moving the place of trial is commonly done to escape problems of prejudicial pretrial publicity—it is the price that society must sometimes pay for the exercise of First Amendment rights.

There is no other injury to defendants. A preliminary injunction requiring defendants to provide a copy of the tape to Lambert does not deny defendants continued possession of the tape and use of it as evidence in the trial of McKenzie.

█ Defendants' arguments that the County Attorney is under legal restraints that preclude him from permitting anybody from knowing or seeing what is on the videotape lacks merit when measured against Lambert's constitutional rights. Government cannot unlawfully seize property of a citizen in violation of his basic constitutional rights and then continue the violation by not returning the property to him under some theory that they are bound to keep the content of that property secret. Prior restraint rarely can be accommodated by the Constitution. *New York Times v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971); *Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). The restraints the defendants rely on are properly applicable to evidentiary matters lawfully in the possession of defen-

dants, but they certainly do not override the rights secured to Lambert by the supreme law of the land, the United States Constitution.

## THE PUBLIC INTEREST

In a republic such as ours, the public interest is well served by free exercise of First Amendment rights. Even if it becomes necessary to change the place of trial of the accused, the cost to the Polk County taxpayers of doing so is far outweighed by the public interest in maintaining First Amendment rights.

## ABSTENTION

Defendants argue that this court should abstain from acting in this matter under the doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and 28 U.S.C. § 2283, which provides:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

The holding of *Younger v. Harris* is that federal courts should not enjoin pending state criminal prosecutions except under extraordinary circumstances where the danger of irreparable loss is both great and immediate. The preliminary injunction sought by plaintiffs and granted by this court does not in any way stay or enjoin the criminal proceedings pending in state court against McKenzie, nor does the preliminary injunction require the County Attorney or the defense or the state court to do or refrain from doing anything whatsoever in the course of conducting the state criminal proceedings. There simply is no federal court interference whatsoever with the state criminal proceedings.

## PRELIMINARY INJUNCTION

Defendant James Smith, who presently has custody of the videotape, and his agents, servants, employees and attorneys, are hereby preliminarily enjoined during the pendency of this suit from failing to provide plaintiff Beau Lambert with a copy of the videotape taken from him the morning of August 1, 1989, by officers of the Des Moines, Iowa, Police Department, and they are mandatorily enjoined to deliver to plaintiff Beau Lambert a copy of the videotape as soon as reasonably possible, and no later than Tuesday, September 5, 1989.

Because no pecuniary injury can result to defendants, security is waived.