678 F.2d 1200
 Thomas Fletcher CRAIG, Jr., Orrin T. Lankford, Appellants,
v.
Sidney BARNEY, Commonwealth's Attorney, City of Petersburg;
Gregory Welsh, Asst. Commonwealth's Attorney; Phillip R.
Brooks, Seymour Bates, Alvin Sheffield, Carliss A. Batts,
Estelle G. Evans, William F. McCoy, Elbert L. Pugh, Special
Grand Jury Members, Appellees.
 No. 81-6890.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 3, 1982.
Decided May 20, 1982.
 
 Burton W. Sandler (Clarence B. Neblett, Jr., Lawrence E. Blake, Prince George, Va., on brief), for appellants.
 Sidney Barney, Commonwealth's Atty., T. Leslie Lindsay, Jr., Asst. Commonwealth's Atty., Petersburg, Va., for appellees.
 Before HALL and SPROUSE, Circuit Judges, and POTTER,* District Judge.
 SPROUSE, Circuit Judge:
 
 
 1
 Thomas F. Craig, Jr., and Orrin Lankford appeal the district court's dismissal of their amended complaint seeking to enjoin special state grand jury proceedings in Petersburg, Virginia. Since the district court, in ordering the dismissal, correctly relied on the abstention doctrine, we affirm.
 
 
 2
 Craig and Lankford, who manage adult bookstores in Petersburg, were summoned to appear before a special state grand jury on May 29, 1981, and to produce the following:
 
 
 3
 1. All books and records, including invoices, journals, ledgers, and cancelled checks relating to the purchase of any publication which is offered for sale on the date this subpoena is issued.2. All books and records, including tax returns, information returns, journals and ledgers relating to gross sales in the two years preceding the date this subpoena is served.
 
 
 4
 3. All books and records of any nature relating to any device in operation of your business on the date this subpoena is served on which still or motion pictures are viewed by customers.
 
 
 5
 4. One copy of each and every book, magazine, pamplet (sic), or other publication which of (sic) offered for public sale on the date this subpoena is served.
 
 
 6
 The appellants were informed that police would inventory all publications sold at their bookstores and that appellants could either surrender the subpoenaed material at the time of the inventory or produce it before the special grand jury. Lankford surrendered his records and one copy of each publication at the time of inventory, but Craig refused to do so. On May 29, the appellants moved to quash the subpoena and a hearing on this motion was held in Petersburg Circuit Court on June 22. The court ruled that the appellants did not have to testify because they had received inadequate notice, but that the portion of the subpoena which compelled the production of records and one copy of each publication was valid.
 
 
 7
 New subpoenas requiring the appellants to appear and testify were issued July 9; Craig's subpoena also required production of all items included in the original subpoena, while Lankford's subpoena excluded magazines which he had already produced.
 
 
 8
 On July 21, Craig and Lankford filed suit in federal district court to enjoin the special grand jury proceedings. Their motion for a temporary restraining order was denied. The appellants filed an amended complaint seeking a preliminary injunction on August 6, and the district court, invoking the doctrine of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), dismissed the complaint on September 16.
 
 
 9
 Younger, of course, requires federal courts to refrain from hearing constitutional challenges to state action in certain circumstances where federal judicial intervention is regarded as an improper intrusion into the rights of a state to enforce its laws in its own courts. 17 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 4251 (1978). "A federal court should not enjoin a state criminal prosecution begun prior to the institution of the federal suit except in very unusual situations, where necessary to prevent immediate irreparable injury." Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).
 
 
 10
 The appellants first contend that dismissal by the district court was unwarranted because there was no pending state criminal prosecution. The appellants, however, view too narrowly both the facts in the case sub judice and the breadth of Younger 's applicability. It is true, looking at the facts, that the appellants presently are not under indictment and that under Virginia law the special grand jury has no power to indict. Va. Code Ann. § 19.2-191(2) (1981 Cum.Supp.). The appellants, however, are subject to the contempt power of the state court if they refuse to comply with the subpoena, and they therefore have access to a forum for the presentation of their constitutional defenses.
 
 
 11
 One rationale underlying the "pending prosecution" requirement is that the federal courts should not dismiss unless the state proceeding has reached a stage that assures the federal plaintiff an opportunity to present its constitutional defenses at some point during the on-going proceeding.
 
 
 12
 (W)hile a pending state prosecution provides the federal plaintiff with a concrete opportunity to vindicate his constitutional rights, a refusal on the part of the federal courts to intervene when no state proceeding is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of foregoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding.
 
 
 13
 Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). In the case sub judice, appellants have the requisite opportunity to vindicate their constitutional rights. Also, contrary to appellants' suggestion, Virginia law appears to afford them other opportunities to challenge the constitutionality of the subpoenas even absent any grand jury indictment. The record is clear, however, that plaintiffs neither appealed the state circuit court's decision refusing to quash the subpoena nor sought a writ of mandamus to the Virginia Supreme Court of Appeals.
 
 
 14
 Turning to the breadth of Younger 's applicability, the Supreme Court now has indicated that the doctrine bars any interference with the state's judicial process which creates an "offense to the State's interest" similar or equal to that created by interference with a state criminal proceeding. Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). Virginia's interest in the unfettered operation of its grand jury system is as important as a state's interest in the operation of its contempt process, which the Vail court recognized as sufficient to invoke the Younger doctrine.
 
 
 15
 The appellants next argue that even assuming that Younger is theoretically applicable to these state proceedings, its use is inappropriate here since the seizure of their publications constituted a "chilling effect" on their first amendment rights which created the requisite "immediate irreparable injury" justifying federal equitable relief.
 
 
 16
 The short answer to this contention is that although the materials subpoenaed enjoy presumptive first amendment protection, there is no evidence, other than appellants' bald assertion, that the subpoena of one copy of each publication threatened to suppress or chill their first amendment rights. The judgment is, therefore, affirmed.
 
 
 17
 AFFIRMED.
 
 
 
 *
 Honorable Robert D. Potter, United States District Judge for the Western District of North Carolina, sitting by designation