The POTOMAC ELECTRIC POWER COMPANY, Appellant,

v.

Stephen H. SACHS, in his capacity as Attorney General of Maryland; Adele Wilzack, in her capacity as Secretary of the Maryland Department of Health and Mental Hygiene, Appellees,

and

State of New York, et al., Amici Curiae.

The POTOMAC ELECTRIC POWER COMPANY, Appellee,

v.

Stephen H. SACHS, in his capacity as Attorney General of Maryland; Adele Wilzack, in her capacity as Secretary of the Maryland Department of Health and Mental Hygiene, Appellants,

and

State of New York, et al., Amici Curiae.

Nos. 86–1572, 86–1573.

United States Court of Appeals, Fourth Circuit.

Argued July 14, 1986.

Decided Oct. 17, 1986.

---

Karen L. Florini, U.S. Dept. of Justice (F. Henry Habicht, II, Asst. Atty. Gen., Jacques B. Gelin, Margaret A. Hill, U.S. Dept. of Justice, Francis S. Blake, Gen. Counsel, Bruce M. Diamond, Regional Counsel, Terrell Hunt, Associate Enforcement Counsel, Alan H. Carpien, Environmental Protection Agency, Washington, D.C., on brief), for amicus curiae U.S.

Robert Abrams, Atty. Gen. of the State of N.Y., Lawrence A. Rappoport, Associate Atty., Albany, N.Y., Nancy Stearns, Asst. Atty. Gen., New York City, John K. Van de Kamp, Atty. Gen., Sacramento, Cal., of State of Cal., Theodora Berger, Asst. Atty. Gen., Los Angeles, Cal., Timothy R. Patterson, Deputy Atty. Gen., San Diego, Cal., Charles A. Graddick, Atty. Gen. of the State of Ala., R. Craig Kneisel, Asst. Atty. Gen., Montgomery, Ala., Joseph I. Lieberman, Atty. Gen. of the State of Conn., Kenneth Tedford, Asst. Atty. Gen., Hartford, Conn., on brief, for amici curiae State of N.Y., et al.

Ann Powers, Vice President and Gen. Counsel, Catherine A. Cotter, Washington, D.C., on brief, for amicus curiae Chesapeake Bay Foundation, Inc.

Jacqueline M. Warren, Donald S. Strait, New York City, Lawanda Still, Legal Asst., on brief, for amicus curiae Natural Resources Defense Council, Inc.

William L. Kovacs, Washington, D.C., Henry W. Killeen, III, Donald S. Stefanski, Jaeckle, Fleischmann & Mugel, Buffalo, N.Y., Joseph F. Cleary, Asst. Secretary and Gen. Atty., Niagara Mohawk Power Corp., Albany, N.Y., on brief, for amicus curiae Niagara Mohawk Power Corp.

J. Thomas Wolfe, Lynne H. Church, on brief, for amicus curiae Baltimore Gas and Elec. Co.

Toni K. Allen, Mary F. Edgar, Piper & Marbury, Washington, D.C., on brief, for amici curiae Edison Elec. Institute, et al.

Arnold M. Weiner (Michael Schatzow, Ethan L. Bauman, Melnicove, Kaufman, Weiner & Smouse, Baltimore, Md., on brief), E. Barrett Prettyman, Jr. (Sherwin J. Markman, John C. Keeney, Jr., David J. Hayes, Hogan & Hartson, Kathleen B. DeWeese, Associate Gen. Counsel, Potomac Elec. Power Co., Washington, D.C., on brief), for appellant/cross appellee.

Ralph S. Tyler, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Richard M. Hall, Michael C. Powell, Kathie A. Stein, Charles R. Taylor, Jr., Asst. Attys. Gen., Baltimore, Md., on brief), for appellees/cross appellants.

Before PHILLIPS, SPROUSE and CHAPMAN, Circuit Judges.

SPROUSE, Circuit Judge:

The Potomac Electric Power Company (PEPCO) appeals from the district court's summary judgment in favor of Steven Sachs, Attorney General of the State of Maryland (Maryland), in PEPCO's declaratory judgment action, 639 F.Supp. 856. PEPCO sought a judgment holding that the federal Toxic Substances Control Act (TSCA)[1] preempts Maryland's hazardous waste laws and regulations,[2] which, among other things, govern the use and disposal of polychlorinated biphenyls (PCBs). PEPCO also sought relief preventing Maryland from enforcing those laws and regulations against PEPCO. The district court denied PEPCO's motion for summary judgment and instead held that TSCA did not preempt the challenged state statutes. On appeal, PEPCO primarily contends that the district court erred because a plain reading of TSCA clearly indicates Congress' intent that the Act preempt any state regulation of PCB disposal.[3]

On cross-appeal, Maryland, of course, agrees with the district court's decision on the merits, but argues that the court erred by refusing to abstain in deference to previously instituted state grand jury proceedings. Maryland had initiated the grand jury proceeding to investigate whether PEPCO had violated Maryland's criminal laws and regulations governing hazardous waste disposal. These proceedings were in progress at the time this declaratory judgment action was filed. We agree with Maryland and hold that the district court should have abstained.

PEPCO is the electric utility corporation serving the District of Columbia and some of its suburbs in Maryland and Virginia. Historically, it has used electrical transformers filled with mineral oil. In many of the transformers, the oil was permanently contaminated with PCBs during the manufacturing process. PCBs are highly toxic materials. PEPCO disposed of the obsolete transformers involved here by sale through competitive bids to scrap metal dealers—in this instance to United Rigging and Hauling, Inc. (United Rigging), of Beltsville, Maryland. Pursuant to their contract, United Rigging transported the obsolete transformers from PEPCO's District of Columbia testing facility to United Rigging's salvage yard in Maryland where the scrapping activities were carried out.

In 1985, Maryland's Waste Management Administration determined that United Rigging's salvage yard and a nearby creek were contaminated with PCBs. Following that determination, PEPCO and United Rigging entered into an Administrative Consent Order with the State of Maryland and the Environmental Protection Agency to conduct a cleanup of the site under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980.[4] In April of 1985, the Attorney General of Maryland commenced a grand jury criminal investigation of PEPCO's and United Rigging's roles in scrapping the transformers and disposing of the hazardous material. It appears the grand jury was on the verge of indicting PEPCO.[5]

Against this background of state activity, PEPCO brought this declaratory judgment action in the United States District Court for the District of Maryland, seeking

---

1. 15 U.S.C. § 2601 *et seq.*

2. Md.Health-Envtl.Code Ann. §§ 7–101 *et seq.*, 9–301 *et seq.* (1982); Md.Admin.Code tit. 10, § 51 (Disposal of Controlled Hazardous Substances).

3. It is of no consequence in light of our decision on abstention, but there is no merit to Maryland's argument that the district court lacked jurisdiction. *See Lawrence County v. Lead-Deadwood School District*, 469 U.S. 256, 105 S.Ct. 695, 698 n. 6, 83 L.Ed.2d 635 (1985); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d 490 (1983).

4. 42 U.S.C. § 9601 *et seq.*

5. In its opinion, the district court concluded that "an indictment of PEPCO for alleged responsibility for or participation in the United Rigging contamination is imminent." United Rigging has since entered into a plea agreement with the Attorney General of Maryland for violations of the Health-Environmental Article of the Maryland Code.

a declaration that provisions of TSCA preempt Maryland's laws and regulations on hazardous waste disposal.[6] PEPCO filed a motion for summary judgment and the district court, ruling against PEPCO, held that TSCA does not preempt Maryland's hazardous waste disposal laws and regulations. PEPCO appeals from this decision and Maryland cross-appeals from the district court's refusal to abstain. Because we hold that abstention is appropriate in this case, we do not address the merits of PEPCO's preemption claim.

The district court ruled in response to Maryland's motion to dismiss that abstention under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), was inappropriate. It analyzed the *Younger* doctrine and concluded that it did not apply to state grand jury proceedings because there was no adequate opportunity for PEPCO to raise its federal claim of preemption before the grand jury. The district court viewed the grand jury investigation as a proceeding that was separate from the possible resulting criminal prosecution. It noted that since there was no certainty of indictment, it was possible that PEPCO would never be able to present the preemption claim in state court. Further, the court reasoned that, even if indicted, there was no indication of how long PEPCO would have to wait for a state forum in which to present its claim of federal preemption. We cannot agree with the conclusion the district court reached from this reasoning.

*Younger v. Harris* set forth the established "national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." 401 U.S. at 41, 91 S.Ct. at 749 (footnote omitted). Specifically, "a federal court should not enjoin a state criminal prosecution begun prior to the institution of the federal suit except in very unusual situations, where necessary to prevent immediate irreparable injury." *Samuels v. Mackell,* 401 U.S. 66, 69, 91 S.Ct. 764, 766,

27 L.Ed.2d 688 (1971). A companion case to *Younger, Samuels v. Mackell* held that declaratory relief should also be denied where an injunction would be improper under *Younger. Id.* at 73, 91 S.Ct. at 768. The Court, however, recognized exceptions to abstention for prosecutions brought in bad faith or for harassment purposes or in other extraordinary circumstances. *Younger v. Harris,* 401 U.S. at 53, 91 S.Ct. at 754.

■ The Supreme Court has never addressed the issue of whether *Younger* applies to state grand jury proceedings. It has ruled, however, that the doctrine applies to quasi-criminal proceedings such as nuisance actions, *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); to state civil enforcement activities such as the recovery of fraudulently obtained welfare payments, *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); child custody actions, *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); and contempt proceedings, *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); and to state administrative proceedings in which important state interests are involved and an adequate opportunity exists to present federal or constitutional challenges to the state action, *Ohio Civil Rights Commission v. Dayton Christian Schools,* —— U.S. ——, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973).

The fundamental principles underlying *Younger* and its progeny of decisions are equity, comity and federalism. A "basic doctrine of equity jurisprudence [is] that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable re-

---

6. PEPCO argues that to avoid preemption of its PCB disposal laws, a state must apply for and receive an exemption under 15 U.S.C. § 2617(b); and Maryland did neither.

lief." *Younger,* 401 U.S. at 43–44, 91 S.Ct. at 750. The notion of comity is one of federal courts having the "proper respect for state functions," which reinforces the policy of noninterference in state criminal proceedings by courts of equity. *Id.* at 44, 91 S.Ct. at 750. Federalism represents

> a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

These principles encompass the belief that state courts are as capable as federal courts of deciding federal or constitutional issues; therefore, all state and federal claims should be addressed in the pending state proceeding. *See Moore v. Sims,* 442 U.S. at 424, 99 S.Ct. at 2377; *Huffman v. Pursue, Ltd.,* 420 U.S. at 611, 95 S.Ct. at 1211. *See also Lynch v. Snepp,* 472 F.2d 769, 774 (4th Cir.1973) ("It should never be forgotten that the Constitution literally calls state judges by name ... and puts upon them the obligation to apply the supreme Law of the Land.").[7] These classic precepts, we think, apply to a state quasi-judicial action taken within its grand jury system with as much or more force as they apply to the state administrative, civil, and quasi-criminal actions involved in *Dayton Christian Schools, Moore v. Sims, Trainor v. Hernandez,* and *Huffman v. Pursue, Ltd.*[8] A common thread to these decisions is the requirement that the federal plaintiff have an opportunity to present the federal claim in the state proceedings.[9]

■■■ The pivotal question then is whether PEPCO has an adequate opportunity to present its preemption claim within

---

**7.** While the Supreme Court has never analyzed the treatment of a preemption claim in applying the *Younger* doctrine, it appears to us that the same logic requiring abstention when there is a constitutional challenge to a state criminal statute applies to litigation where there is a claim of federal preemption due to a congressional enactment. *See Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971) (alternative claims of federal preemption and unconstitutionality of state criminal anarchy law not distinguished). A state's interest in enforcing its criminal statutes remains undiminished until a statute is declared unconstitutional. Likewise, its enforcement interest remains undiminished until the statute is declared preempted or invalid for any other reason. It would strike us as anomalous to hold that a state court may decide federal constitutional issues but is unqualified or inhibited from deciding preemption issues.

**8.** In Maryland, grand juries operate under the auspices of the judicial branch. "Grand juries operate under the control of the court which convenes them," *Duckett v. Touhey,* 36 Md.App. 238, 242, 373 A.2d 323, 325 (1977), with the "single view that the accused may be brought to trial in the court whereof the grand jury is a part...." *In re Report of Grand Jury,* 152 Md. 616, 622, 137 A. 370, 372 (1927) (setting out detailed history of grand juries as well as their function and purpose). Importantly, the Supreme Court of the United States has stated that *federal* grand jury proceedings are judicial in nature. In *Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940), the Court stated:

> The Constitution itself makes the grand jury a part of the judicial process. It must initiate prosecution for the most important federal crimes. It does so under general instructions from the court to which it is attached and to which, from time to time, it reports its findings. The proceeding before a grand jury constitutes "a judicial inquiry" of the most ancient lineage.

*Id.* at 327, 60 S.Ct. at 542, *quoting Hale v. Henkel,* 201 U.S. 43, 66, 26 S.Ct. 370, 375, 50 L.Ed. 652 (1906). *See Levine v. United States,* 362 U.S. 610, 617, 80 S.Ct. 1038, 1043, 4 L.Ed.2d 989 (1960) ("The grand jury is an arm of the court and its in camera proceedings constitute 'a judicial inquiry.' ").

**9.** In contrast, the Supreme Court held *Younger* inapplicable in two instances because the federal plaintiff could not present its claim in the state proceedings. In *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), the Court held that the inherent bias of the state optometry board effectively denied an opportunity to present the federal claim. In *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Supreme Court held that *Younger* did not bar a federal suit on the legality of pretrial detention without a hearing to determine probable cause because the claim could not be raised in defense at the criminal trial. *Id.* at 108 n. 9, 95 S.Ct. at 860 n. 9.

the state grand jury proceedings. The Supreme Court has recently held in the context of state administrative proceedings that an adequate opportunity exists when the federal plaintiff can present its claim on judicial review of the state administrative action or order. In *Middlesex County Ethics Committee v. Garden State Bar Association,* the Court held that abstention was proper where an attorney subject to disciplinary action by the state ethics committee could present his constitutional challenge to the action on review by the New Jersey Supreme Court. 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). In a case decided subsequent to the district court's ruling in this case, the Court stated, in response to a claim that the Ohio Civil Rights Commission could not consider constitutional claims, that "in any event, it is sufficient under *Middlesex,* that constitutional claims may be raised in state court judicial review of the administrative proceeding." *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* 106 S.Ct. at 2724. These cases demonstrate that not only is the immediate proceeding relevant in determining whether there is an opportunity to present a federal claim, but subsequent state judicial proceedings in which the claim can be raised are also relevant. Grand jury investigation and indictment initiate a criminal prosecution in Maryland's system of criminal enforcement. If indicted, PEPCO can present its claim of federal preemption by TSCA as a defense to the criminal prosecution, and therefore has an adequate opportunity to present the claim in the ongoing proceedings.[10]

■ This court has previously decided in another context that the *Younger* doctrine applies to state-initiated grand jury proceedings. *See Craig v. Barney,* 678 F.2d 1200 (4th Cir.), *cert. denied,* 459 U.S. 860, 103 S.Ct. 133, 74 L.Ed.2d 114 (1982). In *Craig,* we dealt with the validity of a sub-poena while here PEPCO attacks the validity of the entire grand jury process as it relates to its alleged environmental violations. We think nevertheless that the reasoning of *Craig* governs our decision in this case and that *Younger* requires abstention. The grand jury, although separate, is an integral part of state criminal enforcement proceedings and here, as in *Craig,* PEPCO will have an adequate opportunity to present its federal claim within that ongoing state system. The district court, therefore, should have abstained.

In view of our abstention ruling, we do not address the merits of PEPCO's preemption claim. On remand, PEPCO's action must be dismissed and its claims pursued in Maryland courts. *Gibson v. Berryhill,* 411 U.S. at 577, 93 S.Ct. at 1697. The judgment of the district court is, therefore, reversed and remanded for proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

**10.** Contrary to PEPCO's contention, the fact that PEPCO cannot present its claim immediately does not establish that it has no adequate opportunity to present the preemption claim. In *Moore v. Sims,* the Court addressed a similar argument concerning delay in holding a requested hearing and ruled that the argument was indistinguishable from "conventional claims of bad faith," and the Court could not "agree that the conduct of the state authorities in this case evinces bad faith." 442 U.S. at 432, 99 S.Ct. at 2381. Here, there is not even an allegation of bad faith.