**GREENMOUNT SALES, INC., a Va. Corp. t/a Variety Book Store and Harlee Little, Appellees,**

v.

**J. R. DAVILA, Jr., Commonwealth's Attorney for the City of Richmond, Va. and Frank S. Duling, Chief of Police for the City of Richmond, Va., Appellants.**

**No. 72–2073.**

United States Court of Appeals, Fourth Circuit.

Submitted March 7, 1973.

Decided May 23, 1973.

---

Andrew P. Miller, Atty. Gen., James E. Kulp, Asst. Atty. Gen., and Daniel T. Balfour, Asst. City Atty., on brief for appellants.

R. R. Ryder and Ryder & Nance, Richmond, Va., on brief for appellees.

Before CRAVEN, BUTZNER and RUSSELL, Circuit Judges.

CRAVEN, Circuit Judge:

Upon the complaint of the manager and corporate owner of an "adult" bookstore, the district court, 344 F.Supp. 860, enjoined officers of the City of Richmond (1) from seizing books and films without a prior adversary hearing on the issue of obscenity, and (2) to surrender books and films already seized provided the bookstore would make a copy of each available for criminal prosecution purposes.

We reverse, but the result is not dissimilar to that accomplished by the district judge: Richmond, we hold, is simply entitled to retain single copies for purposes of prosecution. Correctly, the district court denied plaintiffs' prayer for an injunction preventing both pending and future prosecutions.[1]

Jurisdiction rests upon 28 U.S.C. § 1343(3) and (4) and 42 U.S.C. § 1983, and the predicate for the relief sought was, of course, the first amendment.

Unquestionably there was jurisdiction in the district court. The more difficult question urged upon us by officers of the City of Richmond on appeal is whether the district court in its equitable discretion should have declined to exercise jurisdiction as a matter of comity. It is urged upon us that Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971), compel such abstention in deference to the state courts. But *Younger* was decided in the context of an injunction issued by the district court preventing a prosecution then pending in the California state criminal system. In our

---

1. The plaintiffs-appellees have agreed that the district court's refusal to enjoin state prosecutions was correct, and that issue is not raised on appeal.

case the district judge properly deferred to the state criminal courts by refusing to enjoin either pending or future prosecutions. Thus, he effectively followed the teaching of *Younger*.

■ In *Perez*, the federal district court was held to have erred in issuing an order suppressing and prohibiting the use in state criminal proceedings of evidence said to have been illegally seized. The result was said to stifle the then-pending good faith state criminal prosecution, and considerations of federalism and comity were held to prevent such federal court interference with the state's administration of its criminal laws. Here, even though the prosecution was instituted in good faith, we think it was nevertheless appropriate for the federal court to concern itself with whether or not there was an wholly unnecessary infringement of the first amendment, *i. e.*, whether more books and films were seized than were necessary for a criminal prosecution. The district court substantially followed *Perez*: he did not stifle the prosecution by an order of suppression, but instead sought to assure the availability of evidence.

We hold that the failure to dismiss was not error.

Greenmount Sales, Incorporated, a Delaware corporation authorized to do business in Virginia, operates a retail store known as Variety Book Store located in Richmond, Virginia. On August 19, 1970, the Richmond police simultaneously raided three so-called adult book stores. Officers entered the Variety Book Store at that time, browsed around briefly, and purchased an allegedly obscene item from manager Little. They then placed him under arrest for selling obscene articles, in violation of Va.Code Ann. § 18.1–228 (Supp.1970). Simultaneously, the officers served upon the manager a search warrant issued by a justice of the peace and based upon the affidavit of a police officer, directing the officers to search for "obscene items" allegedly being exhibited and offered for sale.

The officers proceeded to inspect books, films, and other material in the store, looking for items which, in the words of one officer, depicted "abnormal sex relationships, sadism, and homosexuality." The police seized 201 publications, 11 reels of motion picture films, and other miscellaneous sex-oriented items, *e. g.*, dildos, with a total value of approximately $2,400.00.[2] Among the 201 publications, including books and newspapers, were 23 duplicate copies. The duplicates were subsequently returned to the bookstore, and the remaining 183 publications and the 11 films are single copies. The avowed purpose of the seizures was to obtain evidence for criminal prosecution of the plaintiffs.

■ We note that potential issues regarding the obscenity of the material seized and the constitutionality of the Virginia obscenity statute are not before us. The sole issue with which we are concerned is whether the first amendment requires an adversary judicial hearing prior to a seizure by government authorities, for use as evidence in criminal prosecutions, of single copies of allegedly obscene publications.

The district court felt that a prior hearing was required by the mandate of the Supreme Court in A Quantity of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), and by this Circuit's holding in Tyrone v. Wilkinson, 410 F.2d 639 (4th Cir. 1969). We disagree.

In *Books*, the Supreme Court was confronted with a situation involving *massive* seizures of books pursuant to state statutes which authorized the seizure of obscene materials as a first step in

---

2. There were 140 sex "articles" or paraphernalia seized during the raid. The district court correctly concluded that these were not subject to first amendment protection and, thus, were not subject to

its injunction. *See* A Quantity of Books v. Kansas, 378 U.S. 205, 211–212, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964); Metzger v. Pearcy, 393 F.2d 202, 203 (7th Cir. 1968).

*civil* proceedings seeking their destruction. The police there had seized 1,715 copies of 31 novels. In holding the wholesale seizures of allegedly obscene books without a prior adversary hearing constitutionally infirm under the first amendment, the Court expressed deep concern over prior restraints which might erode areas traditionally given broad first amendment protection and which would effectively undermine "the public's opportunity to obtain the publications." *Books, supra,* at 211, 84 S.Ct. at 1726. The Eighth Circuit has, we believe, accurately characterized the rationale of *Books*:

> The Court reasoned that absent an adversary hearing a substantial threat existed that the right of non-obscene publications to unobstructed circulation would be impinged through the *massive* seizures of material deemed obscene solely on the basis of an *ex parte* hearing. [Emphasis added].

United States v. Alexander, 428 F.2d 1169, 1172 (8th Cir. 1970).

In extending the rationale of *Books* to prohibit a similar seizure of a theater's *only* copy of a motion picture film in *Tyrone,* this court was also concerned that the seizure would "result in the suppression of nonobscene material," and thus run afoul of the first amendment. *Tyrone, supra,* at 640 of 410 F.2d. Following the rationale of *Books,* we found inherent in the seizure of a theater's only copy of a movie film the same danger present in the wholesale confiscation of of all available copies of a book: suppression of constitutionally protected communication.

*Books, Alexander,* and *Tyrone* are inapposite to decision of this case. Here the seizure was neither massive in the *Books* sense, nor complete in the *Tyrone* sense, *i. e.,* the only copy. Since only single copies were taken, and others left on the shelves, neither the author's first amendment right to expression nor the public's right to know is infringed.[3]

The seizure in this case by the Richmond police is a procedure justified by the requirements of effective law enforcement, *e. g.,* United States v. Wild, 422 F.2d 34, 38, 39 (2d Cir. 1969), and not prohibited by the first amendment " 'as a prior restraint on the circulation and dissemination of books' in violation of the constitutional restrictions against abridgment of freedom of speech and press." *Books, supra,* at 209, 84 S.Ct. at 1725. Where one of many copies of a film

> is seized for the sole purpose of preserving it as evidence to be used in a criminal action . . . such a seizure cannot be said to be violative of the First Amendment's guarantees albeit a side effect of such a seizure coincidentally prevents that one particular copy of the film from being further disseminated pending the outcome of the criminal proceedings. Unlike the situation in *A Quantity of Books,* the seizure made here was not made for the purpose of preventing the dissemination of the information contained in the film.

Bazzell v. Gibbens, 306 F.Supp. 1057, 1059 (E.D.La.1969).

Affirmed in part and reversed in part.

---

3. *Accord,* United States v. Wild, 422 F.2d 34, 38 (2d Cir. 1969), cert. denied, 402 U.S. 986, 91 S.Ct. 1644, 29 L.Ed.2d 152 (1971); Bazzell v. Gibbens, 306 F. Supp. 1057, 1059 (E.D.La.1969); Rage Books, Inc. v. Leary, 301 F.Supp. 546, 549 (S.D.N.Y.1969).