804 F.2d 274
 Joyce SUGGS and Ronnie Owen Faircloth, Appellants,
v.
Hon. Anthony M. BRANNON, in his official capacity as
Superior Court Judge, State of North Carolina; Ronald L.
Stephens, in his official capacity as District Attorney for
the County of Durham, State of North Carolina; J.L.
Packard, individually & in official capacity as police
officer for the City of Durham, State of North Carolina;
R.C. Evans, individually & in his official capacity as
police officer for the City of Durham, State of North
Carolina; J.E. Mozart, individually & in his official
capacity as police officer for the City of Durham, State of
North Carolina; City of Durham, North Carolina; (numerous
members of the Police Dept. of the City of Durham, whose
names are unknown at this time, individually & in their
capacity as police officers of the City of Durham, State of
North Carolina, Appellees.
Kenneth Lee SMITH, Appellant,
v.
H. MEBANE, Jr., Magistrate of Guilford County, North
Carolina, individually and in his official capacity; A.A.
Leake, Detective, Greensboro Police Department, individually
and in his official capacity; Talbert, Captain, Police
Captain, Greensboro Police Department, individually and in
his official capacity; and The City of Greensboro, North
Carolina, Appellees.
 Nos. 86-1521, 86-1527.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 17, 1986.
Decided Nov. 3, 1986.
 
 Herbert L. Greenman (Paul J. Cambria, Jr., Cherie L. Peterson, Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N.Y., on brief), Thomas F. Loflin, III (Loflin & Loflin, Durham, N.C., on brief), (Arthur M. Schwartz, Denver, Colo., Suggs & Faircloth, on brief) for appellants.
 Jacob L. Safron, Sp. Deputy Atty. Gen., (Lacy H. Thornburg, Atty. Gen. of N.C., Raleigh, N.C., on brief), Kurt C. Stakeman (Womble, Carlyle, Sandridge & Rice; Charles F. Vance, Jr., Winston-Salem, N.C., on brief) for appellees.
 Before RUSSELL and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 Joyce Suggs, Ronnie Owen Faircloth, and Kenneth Lee Smith, employees of adult bookstores operated in North Carolina, appeal an order of the district court dismissing these actions brought under 42 U.S.C. Sec. 1983. We hold that the district court's denial of the appellants' request for injunctive relief was proper, but we conclude that the district court should have retained jurisdiction over their claim for money damages.
 
 
 2
 * On October 1, 1985, amendments to North Carolina's obscenity laws took effect substantially enlarging the state's regulation of the display, dissemination, and sale of sexually explicit materials. See N.C. Gen.Stat. Sec. 14-190.1 et seq. On the same day two Durham policemen visited Joyce Suggs, an employee of Players Bookstore in Durham. The officers gave her a copy of the new laws, which changed the dissemination of obscenity from a misdemeanor to a Class J felony. On October 12, 1985, the police charged Suggs with four felony counts of disseminating obscenity and one misdemeanor count of violating the restrictions on adult establishments.
 
 
 3
 Suggs is a lifelong resident of Durham, where she heads a household of three children and two grandchildren. A judge of the Superior Court initially set Suggs's bail on the October 12 charges at $50,000. Upon application of counsel, the court reduced the bond to $15,000. Suggs presented evidence indicating that in Durham County the suggested bond for someone charged with a misdemeanor is $100, for a Class J felony $1,000, and for a felony punishable by mandatory life in prison $50,000.
 
 
 4
 Following her arrest, Suggs returned to work at Players, where she was visited by Officer J.C. Packard. Suggs claims Packard told her that police were really interested in the prosecution of the bookstore owners and not its employees, but that if she continued to open the store she would be arrested again and her bail would be set at $110,000.
 
 
 5
 On October 24, 1985, Suggs was arrested and charged with two additional felony counts of disseminating obscenity and one misdemeanor count of violating the adult establishment law. Bond was set at $110,000. Suggs was unable to make bail and spent a night in jail. Later, upon application, bond was again reduced. Suggs alleges that as a condition of this bond reduction she could not enter Players Bookstore or Lakewood Video and News, another adult bookstore in Durham. After her release, Suggs also alleges that Officer Packard stopped her near Players Bookstore and told her that her bond could be revoked because of her presence in that location. At the filing of this appeal, the prosecution of Suggs was still pending.
 
 
 6
 On October 7, 1985, Ronnie Owen Faircloth, an employee of Lakewood Video and News, was charged with three felony counts of disseminating obscenity and one misdemeanor count of violating adult establishment restrictions. Faircloth is a lifelong resident of North Carolina with minor children in the state. He had no criminal record. Like Suggs, Faircloth's bail upon his first arrest was set at $50,000. He was unable to post bond and spent three days in jail while his lawyer moved for a bond reduction. Faircloth's bond was eventually reduced.
 
 
 7
 After his release, Faircloth resumed his employment. Later in October, the Durham police returned to the store while Faircloth was on duty. According to Faircloth, the police, while reviewing and inspecting the store's wares, told Faircloth to start getting together money for his bail, which they predicted would be set at $100,000 following his next arrest.
 
 
 8
 On October 24, 1985, Faircloth was again arrested for disseminating obscenity and violating restrictions placed upon adult establishments. Bail was set at $105,000 and made contingent upon his not violating North Carolina's obscenity laws. Faircloth spent an additional four days in jail before his bond was reduced to $20,000. While in jail, Faircloth says police told him they would continue to arrest him until whoever was posting his bond runs out of money. At the filing of this appeal the prosecution of Faircloth was still pending.
 
 
 9
 Kenneth Lee Smith was the manager of Dude's Bookstore in Greensboro. He was arrested under the new statute three times in a one-week period, October 23, 25, and 30, 1985, and charged with possession with intent to disseminate obscenity and disseminating obscenity. At the time of his first arrest, Detective A.A. Leake and Captain Robert Talbott informed Smith that it was their intention to close the store down. After the October 23 arrest, Smith alleges, the store received a phone call from police which threatened subsequent arrest if the store was not closed within 30 minutes of the call. On the day of Smith's third arrest, Leake and Talbott accompanied H. Mebane, Jr., magistrate of Guilford County and also a defendant in this action, into Dude's. Talbott guided Mebane to one of the store's private viewing booths where Mebane watched two films. Mebane then went to an unmarked police car and executed a search warrant authorizing Leake and Talbott to seize one of the films. Leake and Talbott seized not only the film but the projector from the booth. Later that day, a warrant was issued for Smith's arrest. Smith appeared before Mebane who released him on a $10,000 bond. After his third arrest, Smith did not reopen the bookstore.
 
 
 10
 On March 24, 1986, Smith was tried on three charges of violating the obscenity law. The jury could not reach a verdict, and the court declared a mistrial. Further prosecution of Smith is pending.
 
 
 11
 Smith, separately, and Suggs and Faircloth, jointly, filed complaints against police, prosecutorial, and judicial officers alleging that the defendants engaged in a concerted campaign of threats, harassment, and bad faith enforcement of North Carolina obscenity laws designed to close down the bookstores. They claimed that the defendants' conduct denied them due process of law, chilled the exercise of their first amendment rights, imposed a prior restraint, and interfered with the sale of material presumptively protected by the first amendment. Both complaints sought injunctive relief and compensatory and punitive damages.
 
 
 12
 The district court consolidated the actions, and, on motion of the defendants, dismissed the complaints pursuant to the abstention doctrine of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).
 
 II
 
 13
 In Younger, the Supreme Court proscribed federal equitable intervention in a pending state prosecution unless the accused shows "bad faith, harassment or any other unusual circumstance that would call for equitable relief." 401 U.S. at 54, 91 S.Ct. at 755. The appellants contend that Younger is inapplicable because they do not seek to enjoin the state prosecutions or even to obtain a declaratory judgment that the obscenity statutes are unconstitutional. They emphasize that they seek injunctive relief only against bad faith enforcement of the obscenity laws that chill their first amendment rights without due process of law, issuing court orders barring them from the bookstores where they are employed, fixing excessive bail, intimidating them by threats of future prosecutions, and engaging in illegal searches and seizures.
 
 
 14
 Notwithstanding the appellants' disavowal of any attempt to enjoin the pending prosecutions, the issues raised by their complaints and the injunctive relief they seek justify the district court's decision to abstain. Its reliance on Younger was proper, for the exceptions to the Younger doctrine are narrow. See Huffman v. Pursue, Ltd., 420 U.S. 592, 611, 95 S.Ct. 1200, 1211-12, 43 L.Ed.2d 482 (1975).
 
 
 15
 The appellants' complaint of bad faith enforcement of the obscenity statutes is insufficient to invoke the bad faith exception to the application of Younger. Bad faith in this context "generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." Kugler v. Helfont, 421 U.S. 117, 126 n. 6, 95 S.Ct. 1524, 1531-32 n. 6, 44 L.Ed.2d 15 (1975). The appellants have not satisfied this test.
 
 
 16
 In this respect the appellants' case differs from Black Jack Distributors, Inc. v. Beame, 433 F.Supp. 1297 (S.D.N.Y.1977), where the court found bad faith demonstrated by conduct including multiple arrests without prosecutions coupled with the statement of an official that "despite all constitutional limitations we will stop at nothing when we put these [sexually oriented enterprises] out of business. We undertake activities knowing that they are illegal." 433 F.Supp. at 1306.
 
 
 17
 Lacking proof of bad faith, as defined in the context of Younger abstention, the appellants cannot prevail on their claims of censorship through prior restraint or on their claim of intimidation through threats of future prosecution. In Huffman v. Pursue, Ltd., 420 U.S. at 592, 95 S.Ct. at 1202, the Court noted that the district court deemed a state court's unappealed judgment ordering closure of a cinema a prior restraint and granted injunctive relief without considering the application of Younger. The Supreme Court held that the Younger doctrine applied to the state civil action and remanded with directions to determine whether the exceptions to Younger were applicable. By implication Huffman establishes that without proof of bad faith Younger abstention is appropriate despite the appellants' claim of prior restraint. See 420 U.S. at 611-12, 95 S.Ct. at 1211-12.
 
 
 18
 Closely related to the claim of prior restraint is the appellants' complaint that the bad faith enforcement of the obscenity laws has a chilling effect on their first amendment rights. Even apart from their failure to establish bad faith, this claim is insufficient to entitle them to injunctive relief. In Younger, Justice Black wrote: "[T]he existence of a 'chilling effect,' even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action." 401 U.S. at 51, 91 S.Ct. at 754.
 
 
 19
 The court orders, which the appellants seek to enjoin, are incident to pending prosecutions. Entry of such an injunction would require the district court to direct and monitor part of the state proceedings. Similar intrusion would be caused by entry of an injunction limiting the bail the state courts could require. A complaint seeking comparable relief was dismissed in O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). O'Shea dealt with a civil rights action brought against police, prosecutorial, and judicial officers of Alexander County, Illinois, alleging a continuing pattern of racial discrimination. The plaintiffs sought to enjoin discriminatory practices by state courts in setting bond, sentencing, and imposing jury fees in future criminal proceedings. Justice White, writing for the Court, noted that the issuance of such an injunction "would require for its enforcement the continuous supervision by the federal court over the conduct" of the state judicial officers. And this supervision "would disrupt the normal course of proceedings in the state courts via resort to the federal suit ab initio, just as would the request for injunctive relief from an ongoing state prosecution against the federal plaintiff which was found to be unwarranted in Younger." 414 U.S. at 501, 94 S.Ct. at 679. As in O'Shea, enforcement of the injunction that the appellants seek would require nothing less than "an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that Younger ... and related cases sought to prevent." 414 U.S. at 500, 94 S.Ct. at 678.
 
 
 20
 The district court did not err by denying injunctive relief against future searches and seizures. To enter such a decree the court would have to determine whether the searches and seizures conducted by the police were illegal. An injunction could be predicated only on the premise that the police were acting unlawfully. But this would intrude upon the pending state prosecutions where the appellants can question the constitutionality of the searches and seizures. Intrusion of this nature has long been forbidden. See Stefanelli v. Minard, 342 U.S. 117, 120, 72 S.Ct. 118, 120, 96 L.Ed. 138 (1951): ("[F]ederal courts should refuse to intervene in State criminal proceedings to suppress the use of evidence even when claimed to have been secured by unlawful search and seizure." ) Accord Kugler v. Helfant, 421 U.S. at 129-30, 95 S.Ct. at 1533-34; Perez v. Ledesma, 401 U.S. 82, 84-85, 91 S.Ct. 674, 676-77, 27 L.Ed.2d 701 (1971).
 
 
 21
 This opinion is not intended to condone the conduct about which the appellants complain. Nevertheless, the district court properly ruled that Younger and related cases dictate that it must abstain from granting equitable relief because of pending state prosecutions.
 
 III
 
 22
 We cannot affirm the district court's dismissal of appellants' Sec. 1983 damage claims. The Supreme Court has had no occasion to determine whether Younger principles extend to Sec. 1983 actions for damages. See Tower v. Glover, 467 U.S. 914, 923, 104 S.Ct. 2820, 2826, 81 L.Ed.2d 758 (1984). The circuits are divided on the question. See, e.g., Guerro v. Mulhearn, 498 F.2d 1249 (1st Cir.1917) (Sec. 1983 damage claim precluded); Giulini v. Blessing, 654 F.2d 189 (2d Cir.1981) (Sec. 1983 damage claim not precluded). This court had not yet decided the issue. We now hold that Younger does not invariably require dismissal of Sec. 1983 damage actions.
 
 
 23
 Younger abstention presupposes that the federal plaintiff will have an adequate opportunity to raise constitutional claims during the ongoing state proceeding. See Craig v. Barney, 678 F.2d 1200, 1201-02 (4th Cir.1982). A state criminal proceeding, however, ordinarily would not address issues such as appellants' claim that they were held under excessive bond and unconstitutional bail conditions, for pretrial detention issues cannot be raised in defense of a criminal prosecution. See Gerstein v. Pugh, 420 U.S. 103, 108 n. 9, 95 S.Ct. 854, 860 n. 9, 43 L.Ed.2d 54 (1975). If the state criminal court rules that the search and seizure was unlawful, Smith could not recover damages in those proceedings. Deferring the appellants' right to institute an action for damages until the conclusion of the criminal cases might cause their claims to be barred by a statute of limitations. Thus, in order to afford plaintiffs a day in court, they should be allowed to maintain their actions for damages. See Hanpar v. Atkinson, 496 F.Supp. 112, 115 (E.D.Va.1980).
 
 
 24
 The appellees argue that the exercise of federal jurisdiction would result in simultaneous litigation of the same issues in which the district court's ruling might embarrass and interfere with the state proceedings. This need not be the case. In Guilini v. Blessing, 654 F.2d at 193, the court, deciding that a Sec. 1983 damage claim is not barred by Younger, noted that "a federal court is not precluded, in the exercise of its discretion, from staying proceedings in the action before it pending a decision by the state court, with a view to avoiding wasteful duplication of judicial resources and having the benefit of the state court's views." The court then ordered that the damage claims be held in abeyance until the state court had adjudicated the relevant constitutional issues.
 
 
 25
 The district court did not address the merits of the damage claim, nor do we. A stay is appropriate. If the criminal trials provide the parties with a full and fair opportunity to litigate their constitutional claims, they may then possibly assert the state court judgment to preclude either claim or defense as the case may be. But this is not the appropriate proceeding for resolving this issue. See generally 18 Wright, Miller & Cooper, Federal Practice and Procedure Sec. 4471 (1981 & 1986 Supp.).
 
 IV
 
 26
 The district court's judgment denying injunctive relief is affirmed. Its dismissal of the damage claim is vacated, and the case is remanded for further proceedings consistent with this opinion. Each party shall bear his own costs.