**CHESAPEAKE B & M, INC. t/a Highway Craft, Gift & Book Store and Richard Stone**

v.

**Joseph I. CASSILLY, States Attorney for Harford County and Dominick J. Mele, Sheriff, Harford County, Maryland.**

**Civ. No. B–89–2073.**

United States District Court, D. Maryland.

Feb. 2, 1990.

Howard J. Schulman, Baltimore, Md., for plaintiffs.

J. Joseph Curran, Jr., Atty. Gen. of Md., and Andrew H. Baida, Asst. Atty. Gen., Baltimore, Md., for defendants.

WALTER E. BLACK, Jr., District Judge.

This case involves the interplay between the federal doctrine of abstention from enjoining pending state criminal proceedings and the First Amendment's prohibition against mass seizures of potentially protected material without a prior adversary hearing. Plaintiff Chesapeake B & M, Inc., t/a Highway Craft, Gift & Book Store ("Highway Craft"), is a shop selling sexually related materials in Aberdeen, Maryland. Highway Craft and plaintiff Joseph Stone, an employee of Highway Craft, have filed suit against the State's Attorney for Harford County and the Sheriff of Harford County pursuant to 42 U.S.C. § 1983, claiming that the state unlawfully seized material from plaintiffs in violation of the First, Fourth and Fourteenth Amendments to the United States Constitution. Defendants have now filed a motion to dismiss, asserting that this Court must abstain from interfering with ongoing state criminal proceedings.

Representatives of the Sheriff's Office seized 1,746 magazines, videotapes and books, apparently the entire stock of the Highway Craft store, on June 13, 1989, pursuant to a search warrant issued by Harford County Circuit Court Judge Cypert O. Whitfill. The search warrant recited Judge Whitfill's finding that there was "probable cause to believe that there is now being displayed for advertising purposes ... books, magazines, photographs, films and posters which depict sadomasochistic abuse, sexual conduct, and sexual excitement" on plaintiff's premises, in violation of the Maryland Annotated Code, article 27, § 416D. The warrant was based upon an application and affidavit to which were attached the front and back covers from a single issue of one magazine, *Slaves of Lust.*

The warrant language under which the 1,746 items were seized tracked the language of the statute, authorizing the seizure of "all books, magazines, photographs, films[,] posters, and other items or materials, that are displayed for advertising purposes which depict sadomasochistic abuse, sexual conduct, or sexual excitement." Thus, the warrant apparently vested in the executing officers the authority to determine which materials were obscene and thus properly seizable under the statute as interpreted in *Smiley v. State,* 294 Md. 461, 450 A.2d 909 (1982) (upholding the constitutionality of § 416D by reading into it a requirement that materials within its

scope fall under the Supreme Court's definition of obscenity).

Plaintiffs now request three forms of relief. First, they seek an injunction by this Court against any state prosecutions based upon the seized items, which plaintiffs claim were taken in violation of their constitutional rights. Second, they seek an order compelling the return of the seized materials. Finally, plaintiffs request an order enjoining the state officials from further violating plaintiffs' constitutional rights with similar seizures. Since the filing of the complaint in this case, state grand jury proceedings have been initiated, and, on October 26, 1989, criminal informations were filed in the Circuit Court for Harford County against the plaintiff bookstore. For the reasons stated below, the Court will grant defendants' motion to dismiss with regard to plaintiffs' request for injunction of the pending state criminal proceedings. However, the Court declines to dismiss the case or abstain from deciding issues raised by the mass seizure undertaken without a prior adversary hearing.

## I.

■ The primary issue raised by plaintiff's request for an injunction against state criminal proceedings is whether this Court must abstain under the doctrine originally announced by the Supreme Court in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The Younger doctrine requires federal courts to abstain from enjoining, or issuing a declaratory judgment with respect to, a state criminal proceeding when: 1) there are ongoing state judicial proceedings; 2) the ongoing state judicial proceedings implicate an important state interest; and 3) there are adequate opportunities in the ongoing state proceedings to raise constitutional challenges. *See Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). *Younger* and its progeny "espouse a strong policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex*

*County Ethics Comm.*, 457 U.S. at 431, 102 S.Ct. at 2521. This policy is based upon notions of comity which include proper respect for state functions and "the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.* at 431, 102 S.Ct. at 2521.

In the instant case, plaintiffs concede in their memorandum that "there are presently state proceedings pending within the meaning of *Younger.*" Moreover, the "important state interest" requirement for abstention is clearly satisfied in light of Fourth Circuit precedent noting the strong state interest, for *Younger* purposes, in uninterrupted operation of the Grand Jury process. *Potomac Electric Power Co. v. Sachs*, 802 F.2d 1527, 1531 (4th Cir.1986), *judgment vacated on other grounds, sub nom. Potomac Electric Power Co. v. Curran*, 484 U.S. 1022, 108 S.Ct. 743, 98 L.Ed.2d 756 (1988); *Craig v. Barney*, 678 F.2d 1200, 1202 (4th Cir.), *cert. denied*, 459 U.S. 860, 103 S.Ct. 133, 74 L.Ed.2d 114 (1982). The Court also notes that the substantial state interest in protecting public morals through enforcement of obscenity laws has been directly implicated since the recent filing of a criminal information against the plaintiff bookstore. The third *Younger* requirement, that the constitutional relief sought be available in the state forum, is also satisfied by the facts of this case. "Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard constitutional rights." *Middlesex County Ethics Comm.*, 457 U.S. at 431, 102 S.Ct. at 2521 (emphasis in original). Plaintiffs have offered the Court no evidence that the Maryland state court lacks the power to provide relief from prosecutions that were in any way unconstitutional.

Plaintiffs' opposition to abstention by this Court is not based upon an argument that the circumstances of this case fail to meet the general requirements of *Younger*. Rather, plaintiffs cite the Supreme Court in *Mitchum v. Foster*, 407 U.S. 225,

92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), for the proposition that *Younger* left room for federal injunctive intervention in a pending state proceeding where irreparable injury is both great and immediate, where state law is flagrantly and patently violative of express constitutional prohibitions, or where there is a showing of bad faith or harassment by the state authorities calling for equitable relief. *Id.* at 230–31, 92 S.Ct. at 2155–56 (citing *Younger*, 401 U.S. at 46, 91 S.Ct. at 751); *Perez v. Ledesma*, 401 U.S. 82, 85, 91 S.Ct. 674, 676–77, 27 L.Ed.2d 701 (1971). Plaintiffs claim that such extraordinary circumstances of bad faith and irreparable injury exist in the present case, justifying an exception to application of the general *Younger* rule. They argue that the warrant authorizing the search was constitutionally overbroad on its face, and gave the executing officers unfettered discretion to determine which materials were "obscene," and could thus be properly seized. Plaintiffs also argue that the mass seizure of substantially all of plaintiffs' stock based upon such a warrant, and without a prior adversary hearing, is evidence of an ongoing bad faith attempt on the part of state officials to chill plaintiffs' exercise of their First Amendment rights.

The Supreme Court explained the "bad faith" exception to *Younger* in a companion case, *Perez v. Ledesma*, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971), stating that:

> Only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate.... There is nothing in the record before us to suggest that [state] officials undertook these prosecutions other than in a good-faith

attempt to enforce the State's criminal laws.

401 U.S. at 85, 91 S.Ct. at 677 (citations omitted). In *Suggs v. Brannon*, 804 F.2d 274 (4th Cir.1986), the Fourth Circuit noted that "[b]ad faith in this context 'generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction.'" *Id.* at 278 (quoting *Kugler v. Helfant*, 421 U.S. 117, 126 n. 6, 95 S.Ct. 1524, 1531 n. 6, 44 L.Ed.2d 15 (1975)). The *Suggs* court then held that "without proof of bad faith *Younger* abstention is appropriate despite the appellant's claim of prior restraint." 804 F.2d at 278.

In the instant case, the Court is not persuaded that sufficiently extraordinary circumstances exist to justify an intervention into the ongoing state criminal proceedings. Plaintiffs have offered insufficient evidence that the state's actions were taken "other than in a good faith attempt to enforce the State's criminal laws." *Perez*, 401 U.S. at 85, 91 S.Ct. at 677. Moreover, the Court has no evidence before it suggesting that the search and seizure in question, as well as the grand jury proceedings and criminal informations based thereupon, have been pursued by state authorities "without a reasonable expectation of obtaining a valid conviction." *Suggs*, 804 F.2d at 278.[1]

The fact that the seizure in question may have been part of a larger law enforcement operation does not lead the Court to conclude that such an operation was being conducted without a good faith belief in its lawfulness. Moreover, while plaintiffs cite as evidence of the state's bad faith the alleged statement of an Assistant State's Attorney to the effect that the seizure operations would hopefully "get the pornography out of Harford County," such a statement is not sufficient to invoke the "bad faith" exception to the *Younger* rule absent a showing that the plaintiff has

---

1. The Court has uncovered but a single case in which there was such overwhelming evidence of bad faith on the part of local authorities that a district court's injunction of ongoing state criminal proceedings was upheld. *Krahm v. Graham*, 461 F.2d 703, 707 (9th Cir.1972). A comprehensive review of the circumstances giving rise to this result in *Krahm* need not be offered here. The Court notes, however, that they go substantially beyond the allegations made in the instant case. *See* 461 F.2d at 705–06.

suffered "great and immediate" irreparable injury. *See Postscript Enterprises, Inc. v. Peach,* 878 F.2d 1114, 1116 (8th Cir.1989). The Court declines to find that such "great and immediate" irreparable injury has occurred in this case.

The Fourth Circuit has recently reaffirmed the strength of the *Younger* abstention doctrine in *Cinema Blue of Charlotte, Inc., et al. v. Gilchrist,* 887 F.2d 49 (4th Cir.1989). In *Cinema Blue,* the federal plaintiff was defending against state criminal prosecution on charges of exhibiting allegedly obscene materials to the public. The plaintiff sought a federal injunction against additional state prosecution in the event that, as part of its defense preparation in the original prosecution, it exhibited the materials to public groups in order to aid expert testimony as to whether the materials were "patently offensive" as judged by "contemporary community standards." 887 F.2d at 50. The district court granted plaintiff's request and issued a preliminary injunction against the threatened additional state prosecution. *Cinema Blue of Charlotte, Inc. v. Gilchrist,* 704 F.Supp. 631, 637 (W.D.N.C.1989).

The Court of Appeals for the Fourth Circuit reversed, holding that the district court should have abstained, under *Younger,* from entering the injunction sought by the plaintiff. *Cinema Blue,* 887 F.2d at 54. In the course of its discussion, the court forcefully reaffirmed the policies behind the *Younger* doctrine, as well as the continuing vitality of the "bad faith" standard discussed above. *Cinema Blue,* 887 F.2d at 54 (citing *Suggs v. Brannon,* 804 F.2d at 279; *Kugler v. Helfant,* 421 U.S. 117, 126 n. 6, 95 S.Ct. 1524, 1531, 44 L.Ed.2d 15 (1975)). Because the Court declines to hold that the circumstances of this case rise to that standard, it will adhere to the strong general rule under *Younger* that federal courts must abstain from enjoining ongoing state criminal proceedings. Accordingly, plaintiff's claim will be dismissed to the extent that it seeks such an injunction.

## II.

■ Plaintiffs' two remaining requests for relief, an order that the materials seized be returned and an injunction against future constitutional violations, directly implicate a line of cases completely distinct from *Younger* and its progeny. Plaintiffs have asked the Court to order the return of the seized materials on the ground that they are presumptively protected by the First Amendment and have been subjected to mass seizure without a prior adversary hearing. As such, the Court must address and apply the Supreme Court's holdings in *A Quantity of Copies of Books v. Kansas,* 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964) (hereinafter *"Books"*), and *Marcus v. Search Warrants,* 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961).

In *Books,* the Supreme Court held that wholesale seizures of allegedly obscene materials without a prior adversary hearing violated the First and Fourteenth Amendments to the Constitution. 378 U.S. at 213, 84 S.Ct. at 1727. The police there had seized 1,715 copies of 31 novels. The Court held that "[s]tate regulation of obscenity must 'conform to procedures that will ensure against the curtailment of constitutionally protected expression, which is often separated from obscenity only by a dim and uncertain line.' " *Id.* at 210, 84 S.Ct. at 1726 (quoting *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 66, 83 S.Ct. 631, 637, 9 L.Ed.2d 584 (1963)). While an adversary hearing to determine obscenity was held after the seizure, the Court stated that "if seizure of books precedes an adversary determination of their obscenity, there is danger of abridgment of the right of the public in a free society to unobstructed circulation of nonobscene books." *Id.* at 213, 84 S.Ct. at 1727.

Quoting *Marcus v. Search Warrant,* 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), the Court held that " '[s]ince a violation of the Fourteenth Amendment infected the proceedings, in order to vindicate appellants' constitutional rights,' the judgment resting on a finding of obscenity must be reversed." 378 U.S. at 213, 84 S.Ct. at

1727 (quoting *Marcus*, 367 U.S. at 738, 81 S.Ct. at 1719). In *Marcus*, the Court had held unconstitutional seizures based upon a warrant which gave the police "virtually unlimited authority to seize any publications which they considered to be obscene, and [which] was issued on a verified complaint lacking any specific description of the publications to be seized, and without prior submission of any publication whatever to the judge issuing the warrant." *See Books*, 378 U.S. at 209, 84 S.Ct. at 1725 (discussing the opinion in *Marcus*). In *Greenmount Sales, Inc. v. Davila*, 479 F.2d 591 (4th Cir.1973), the Fourth Circuit noted that, in *Books*:

> "The Court reasoned that absent an adversary hearing a substantial threat existed that the right of non-obscene publications to unrestricted circulation would be impinged through *massive* seizures of material deemed obscene solely on the basis of an *ex parte* hearing."

479 F.2d at 594 (quoting *United States v. Alexander*, 428 F.2d 1169, 1172 (8th Cir. 1970)) (emphasis added by *Greenmount* court).

A number of federal courts have been faced with cases in which police seized a mass of materials prior to an adversary hearing on obscenity. The plaintiffs in these cases came to federal court seeking an injunction of the ongoing state prosecutions as well as the return of the unlawfully seized materials. As a result, the courts have had to determine whether and to what extent *Younger* bars federal intervention where mass seizures have effected a prior restraint in violation of the holdings in *Books* and *Marcus, supra*.

In *Greenmount Sales*, the Fourth Circuit explicitly affirmed the district court's refusal to abstain from scrutinizing the seizure of allegedly obscene materials, holding that:

Here, even though the prosecution was instituted in good faith, we think it was nevertheless appropriate for the federal court to concern itself with whether or not there was a wholly unnecessary infringement of the first amendment, *i.e.*, whether more books and films were seized than were necessary for the criminal prosecution.

479 F.2d at 593. The *Greenmount* court thus reconciled its holding with the Supreme Court's position in *Perez* that the district court erroneously ordered return of *all* allegedly obscene materials seized in that case without a prior adversary hearing. 401 U.S. at 84, 91 S.Ct. at 676. Discussing the wholesale return of all such materials, the *Perez* Court wrote:

> It is difficult to imagine a more disruptive interference with the operation of the state criminal process short of an injunction against all state proceedings. Even the three-judge [district] court recognized that its judgment would effectively stifle the then-pending state criminal prosecution.

401 U.S. at 84, 91 S.Ct. at 676. The *Greenmount* court held that *Younger* and *Perez* did not prohibit a district court from exercising jurisdiction where, rather than attempting to stifle an ongoing state prosecution with a wholesale suppression order, the court sought merely to assure itself that unlawful pre-hearing seizures unnecessary to that prosecution had not occurred in violation of *Books, supra*. Ultimately, the Fourth Circuit held that the seizure at issue in *Greenmount*, which resulted in the retention only of single copies of allegedly obscene materials for use as evidence, had been permissible. 479 F.2d at 594.[2] The court distinguished *Books* on the ground that it had involved "*massive* seizures" of materials. *Id.* at 593 (emphasis in original).

---

**2.** A few weeks after the *Greenmount* decision was rendered, the Supreme Court decided *Heller v. New York*, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973). In *Heller*, the Court noted that it had "never held, or even implied, that there is an absolute First or Fourteenth Amendment right to a prior adversary hearing applicable to all cases where allegedly obscene material

is seized." *Id.* at 488, 93 S.Ct. at 2792. The Court then held that seizure of limited amounts of allegedly obscene materials, under a lawful warrant, and for the purpose of preserving the material *as evidence in a criminal prosecution*, was constitutionally permissible without a prior adversary hearing on the issue of obscenity. *Id.*

In cases where mass seizures have taken place without a prior adversary hearing, federal courts have held that, despite the application of *Younger,* local authorities must return all but a limited number of copies of each obscene item pending a full hearing. In *Cinema Classics, Ltd. v. Busch,* 339 F.Supp. 43 (C.D.Cal.1972), *judgment aff'd,* 414 U.S. 946, 94 S.Ct. 269, 38 L.Ed.2d 203 (1973), the district court ordered the return of all but three copies of each allegedly obscene item seized pursuant to a warrant but without a prior hearing. *Id.* at 49–51. The court, noting that *Younger* merely proscribed enjoining state prosecutions, stated that "[c]learly, Defendants do not need *each and every* copy of the great mass of material seized in order to prove an intent to distribute." *Id.* at 49 (emphasis in original).

In *American News Co. v. Ladas,* 454 F.2d 1237 (6th Cir.1972), the Court of Appeals for the Sixth Circuit modified a district court order mandating the return of all allegedly obscene materials taken in a mass seizure to allow state authorities to retain single copies of each, but refused to enjoin the state prosecution because there had been no showing of bad faith on the part of the federal defendants. *Id.* at 1240. The court noted the continuing vitality of the *Books* line of cases and stated that its modification of the district court's order allowed reconciliation of that line of cases with *Younger* and *Perez. Id.* Moreover, the *American News* court held that, under *Younger,* "both the obscenity issue presented by the prosecution and the Fourth Amendment issue presented by the appellees should be litigated first in the state court forum." *Id.*

Similarly, in *Sooner State News Agency, Inc. v. Fallis,* 367 F.Supp. 523 (N.D.Okl. 1973), the district court held that, where *Books* and *Marcus* violations were established, authorities had to return to the plaintiffs all but three copies of written materials and single copies of films seized *en masse* without a prior adversary hearing. *Id.* at 530, *citing Heller v. New York,* 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973). The court declined, however, to enjoin the ongoing state criminal prosecution in the absence of a sufficient showing of bad faith enforcement or harassment by the local authorities. *Id.* at 526. *See also, Eagle Books, Inc. v. Ritchie,* 455 F.Supp. 64, 72 (D.Utah 1978) (case not involving *Younger* questions in which all but single copies of allegedly obscene materials seized without prior adversary hearing were ordered returned).

Defendants argue that this Court should abstain on the issue of returning the seized materials because plaintiffs have a potential remedy available to them under article 27, section 551 of the Maryland Annotated Code, which allows plaintiffs to apply for the return of the materials seized. Plaintiffs cite *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), for the proposition that, "[a]bsent a clear showing that appellees ... could not seek the return of their property in the state proceedings and see to it that their federal claims were presented there, the requirements of *Younger v. Harris* could not be avoided...." *Id.* at 349, 95 S.Ct. at 2291–92. However, *Hicks* involved a seizure of only four copies of a movie, "Deep Throat," which had been seized pursuant to separate warrants issued seriatim. 422 U.S. at 334, 95 S.Ct. at 2284. Because the seizure was not massive in nature, the strong proscription against prior restraint of presumptively protected materials addressed by the Court in *Marcus* and *Books* simply did not apply. As a result, *Hicks* is inapposite to the instant case.

The Court is persuaded that abstention on the issues in plaintiffs' complaint dealing directly with the mass of materials seized and possible injunction against such seizures in the future would be improper given the circumstances of this case. The massive nature of the seizure in question, the general scope of search warrant, and the lack of a prior adversary hearing on the issue of obscenity, bring this case squarely within a series of decisions, including the *Greenmount Sales* decision by the Fourth Circuit, holding that abstention is not mandated on the issue of whether local authorities have effectuated unconstitutional prior restraint.

For all of the foregoing reasons, the Court will GRANT defendant's motion to dismiss insofar as it relates to plaintiff's request for an injunction of the ongoing state criminal proceedings. The Court will DENY the motion to dismiss to the extent that it relates to plaintiff's requests for an order mandating the return of unlawfully seized materials, and for an injunction against future constitutional violations by defendants. Because the issues are not before the Court at this time, determinations as to the propriety of such orders in this case will await further action by the parties. The Court will enter a formal order in conformity with the rulings contained in this Opinion.